**Elizabeth E. MEYER et al.**

v.

**CITY OF NEWPORT et al.**

**No. 2002–457–Appeal.**

Supreme Court of Rhode Island.

March 24, 2004.

Robert M. Duffy, Esq., Providence, for Plaintiff.

William P. Devereaux, Esq., Providence, Joseph J. Nicholson, Jr., Esq., Newport, for Defendant.

Present: FLANDERS, GOLDBERG, and SUTTELL, JJ.

## OPINION

GOLDBERG, Justice.

This case concerns an area of Newport known as Waites Wharf, which is situated along Newport Harbor in the lower Thames Street area of the city. The plaintiffs are either abutting landowners or they have alleged that they make use of the wharf area. According to plaintiffs, in 1996 and 1997, the defendant, Harbor Realty LLC (defendant or Harbor Realty), built a marina that extended beyond the scope of an assent previously granted by the Rhode Island Coastal Resources Management Council (CRMC). The plaintiffs alleged that the marina impedes a public right of way to the waterfront at West Extension Street known as "the channel."

In February 1997, Harbor Realty sought approval from the CRMC for its assent to the marina "as-built." The Newport City Council (the city council) objected to Harbor Realty's application. On July 23, 1997, the city council adopted Resolution 97–90 directing that the city notify CRMC of its opposition to Harbor Realty's application. The city council also resolved to "[w]ork with the City Solicitor's office to pursue whatever legal avenues necessary to establish and affirm the City's riparian rights." Accordingly, in October 1997, defendant City of Newport (the city) filed a declaratory judgment action (the underlying action) against Harbor Realty, Westwind Marina LLC, and Spring Wharf Holding LLC, suggesting that these establishments had blocked full access to public riparian rights to the channel.

The underlying action was settled on May 4, 2000, when the city, Harbor Realty and the remaining defendants entered into a consent judgment. The consent judgment, which is the focal point of this case, established the public riparian and littoral rights to the area, and resolved the city's

and Harbor Realty's access and control over the wharf area. Specifically, the consent judgment required Harbor Realty to remove a floating restaurant vessel known as "The Boat" from the channel. Harbor Realty, however, had the option to moor a replacement vessel in the channel during certain times. As consideration for removing "The Boat," the city agreed that Harbor Realty's liquor license would not lapse for five years. Harbor Realty also agreed to limit the use of a thirty-foot-by-ninety-foot pier to vessels that extend no more than twenty-seven feet past the northernmost point of the pier. Also, the consent judgment required Harbor Realty to remove an eight-foot boardwalk and relocate it on land, as well as construct public dingy docks along the channel. In return, the city pledged to support Harbor Realty's CRMC petition for the public dingy docks, its CRMC petition for an extension of certain dock space, and most importantly, its CRMC petition to prohibit public access from 8 p.m. to 8 a.m. to docks where private vessels are berthed. This final condition, the prohibition of public access to the piers at certain times of the day, was ostensibly agreed to by all parties to the consent judgment because "all parties agree that public safety and issues of liability are paramount."

According to plaintiffs, they did not find out about the consent judgment until October 2001, when they received notice of upcoming CRMC hearings relating to the issues addressed in the consent judgment. Believing that "it was obviously far too late to intervene in the [underlying action]," plaintiff Meyer filed the instant lawsuit in October 2001, seeking declaratory and injunctive relief. In April 2002, an amended complaint was filed adding the other plaintiffs. Subsequently, both sides filed motions for summary judgment. The hearing justice considered these motions with the benefit of oral argument in June 2002. In a written decision, the hearing justice granted defendants' motion for summary judgment, finding that the Superior Court did not have subject matter jurisdiction over plaintiffs' declaratory judgment claim because the Uniform Declaratory Judgments Act, G.L.1956 chapter 30 of title 9, does not vest the Court with authority to vacate a consent judgment. The hearing justice also ruled that plaintiffs could not seek to vacate the consent judgment pursuant to Rule 60 of the Superior Court Rules of Civil Procedure because they were not parties to the judgment and Rule 60 did not apply to them. With respect to plaintiffs' request for injunctive relief, the hearing justice found that plaintiffs failed to demonstrate irreparable harm, and failed to show that the public's access to the Waites Wharf area was currently or imminently threatened. Judgment in favor of defendants was entered on July 8, 2002. The plaintiffs filed a notice of appeal on July 18, 2002.

On appeal, plaintiffs contend that the trial justice has the authority under the Uniform Declaratory Judgments Act to construe the validity of the earlier judgment because a consent judgment is a form of contract. They also contend that the trial justice should have vacated the consent judgment pursuant to Rule 60 because the city solicitor did not have actual authority to sign the consent judgment, and the city council neither approved the agreement nor ratified its terms. The plaintiffs further contend that the trial justice erred in finding that they did not suffer present or imminent irreparable harm and in denying their request for injunctive relief. They argue that their uncontested affidavits sufficiently demonstrated that certain provisions of the consent judgment denied them access to Newport Harbor, and that, at the very least, the affidavits established questions of ma-

terial fact concerning the harm they will suffer, making summary judgment inappropriate.

## Discussion

 After reviewing the record of this appeal, we are of the opinion that plaintiffs have failed to establish the basic prerequisites for an actual case and controversy. "[A] necessary predicate to a court's exercise of its jurisdiction under the Uniform Declaratory Judgments Act is an actual justiciable controversy." *DeAscentis v. Pine*, 729 A.2d 715, 717 (R.I.1999) (per curiam) (quoting *Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I.1997)); *Providence Teachers Union v. Napolitano*, 690 A.2d 855, 856 (R.I.1997) (per curiam). By definition, a justiciable controversy must contain a plaintiff who has standing to pursue the action; that is to say, a plaintiff who has suffered "injury in fact." *Rhode Island Ophthalmological Society v. Cannon*, 113 R.I. 16, 28, 317 A.2d 124, 131 (1974). Injury in fact may be characterized as "an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Pontbriand v. Sundlun*, 699 A.2d 856, 862 (R.I.1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Furthermore, justiciability is not present unless the facts of the case yield some legal hypothesis which will entitle the plaintiff to real and articulable relief. *See Goodyear Loan Co. v. Little*, 107 R.I. 629, 631, 269 A.2d 542, 543 (1970); *Lamb v. Perry*, 101 R.I. 538, 542, 225 A.2d 521, 523 (1967). We are satisfied that plaintiffs have failed to meet both tests of justiciability.

 In this instance, we fail to see how these plaintiffs have suffered personalized injury in fact. Notwithstanding their affidavits, the harm plaintiffs claim to have suffered—lack of access to the waterfront—arises from riparian and littoral rights that are vested equally in all members of the community. This case is similar to a number of cases in which this Court has refused to find standing when a plaintiff has failed to demonstrate a personalized injury distinct from that of the community as a whole. *See, e.g., West Warwick School Committee v. Souliere*, 626 A.2d 1280, 1284 (R.I.1993) (denying motion to intervene where plaintiffs "failed to show any actual or concrete wrong beyond a general grievance common to all" taxpayers); *Ianero v. Town of Johnston*, 477 A.2d 619, 621 (R.I.1984) (same). Moreover, our decision in *Lamb* is remarkably similar to the case on appeal. In that case, twelve residents of East Providence attempted to bring a declaratory judgment action challenging a city ordinance. This Court concluded that the *Lamb* plaintiffs did not have standing to pursue their lawsuit because they had not asserted a "distinct personal legal interest [that was] different from that of the public at large." *Lamb*, 101 R.I. at 541, 225 A.2d at 522.

 Furthermore, we are not persuaded that the issues raised in this case are of sufficient importance to warrant an exception to the standing requirement. *See, e.g., Burns v. Sundlun*, 617 A.2d 114, 116 (R.I.1992). In *Sousa v. Town of Coventry*, 774 A.2d 812, 815 n. 4 (R.I.2001) (per curiam), this Court held that even accepting plaintiffs' argument that a town manager lacked the authority to execute a lease of town property, people who were not a party to the agreement did not have standing to challenge its validity. Although we are mindful that the present case concerns a consent judgment rather than a lease agreement, it is equally true that private citizens cannot seek to invalidate a consent judgment to which they were not parties.

 The lack of a justiciable controversy between these litigants is not the

only defect in the plaintiffs' case. Their failure to join all parties to the consent judgment is fatal to their claim. All parties who have an interest that would be affected by a declaration are indispensable and must be joined in a declaratory judgment action. *Sullivan,* 703 A.2d at 754 (citing § 9–30–11); *Thompson v. Town Council of Westerly,* 487 A.2d 498, 500 (R.I.1985). "A court may not assume subject-matter jurisdiction over a declaratory-judgment action when a plaintiff fails to join all those necessary and indispensable parties who have an actual and essential interest that would be affected by the declaration." *Sullivan,* 703 A.2d at 754 (citing *In re City of Warwick,* 97 R.I. 294, 296, 197 A.2d 287, 288 (1964)). At a minimum, this includes the parties to the consent judgment.

## Conclusion

For the foregoing reasons, we deny and dismiss the plaintiffs' appeal and affirm the judgment of the Superior Court. The papers of the case are remanded to the Superior Court.

Chief Justice WILLIAMS and Justice FLAHERTY did not participate.