DECISION
This matter comes before the Court on a motion for summary judgment filed by Plaintiff N M Properties, LLC ("Plaintiff") on a declaratory judgment action. The Defendant Town of West Warwick (the "Town") has filed a timely objection, and further, has requested dismissal of Plaintiff's action. After reviewing the motion, objection, supporting memoranda, and attached exhibits submitted by the parties, this Court finds that Plaintiff has failed to establish an actual justiciable controversy, as required under the Uniform Declaratory Judgments Act.See G.L. 1956 § 9-30-1, et seq. As such, this Court is without jurisdiction to decide the instant matter. Accordingly, Plaintiff's complaint is dismissed.[1]
 Facts and Travel
Plaintiff is the owner of a piece of real property located at 1237 Main Street in West Warwick, Rhode Island (the "Property"). Since 1990, Plaintiff has leased the Property to the State of Rhode Island (the "State") for use as a Motor Vehicle Registry (the "Registry") for the State's Division of Motor Vehicles. Plaintiff's lease with the State, which was entered into in 2002, expired on December 31, 2006 (the "Lease"). *Page 2 
However, the State has remained a tenant on a month-to-month basis and continues to operate the Registry on the Property. The underlying dispute focuses on two municipal parking lots, which are owned by the Town (the "Municipal Parking Lots"). The Municipal Parking Lots are located in close vicinity to the Property on Archambault Avenue. Plaintiff asserts that patrons of the Registry have traditionally parked in the Municipal Parking Lots which are comprised of approximately 44,791 square feet and contain roughly one-hundred parking spaces.
On May 16, 2006, the Town held its Annual Financial Town Meeting. Notice of the meeting was properly provided via a warrant issued by the Town's clerk. At the meeting, a motion was introduced to pass a resolution which would authorize the Town to sell the Municipal Parking Lots. The motion was seconded and passed unanimously. Subsequently, on or about July 17, 2006, the Town Council passed Ordinance No. 2006-14. This ordinance created the Arctic Design Control District for the purpose of encouraging the revitalization of the area of the Town known as Arctic Village. The Municipal Parking Lots are located in the Arctic Design Control District.
Additionally, on July 17, 2006, the West Warwick Planning Board convened to hear an application for a comprehensive permit filed by The Women's Development Corporation and WildBerry Apartments, Incorporated (the "Developer"). The Developer's application proposed the construction of low and moderate income housing in Arctic Village. The proposed development would be situated in part on the Municipal Parking Lots. On August 7, 2006, the Planning Board voted to approve the Developer's application. Thereafter, on August 15, 2006, the Town Council voted to sell the Municipal Parking Lots to the Developer. *Page 3 
As a result of the above, Plaintiff filed the underlying action pursuant to Rhode Island's Uniform Declaratory Judgments Act. Plaintiff seeks a declaration that the Town unlawfully, impermissibly and without authority agreed to sell the Municipal Parking Lots to the Developer. Plaintiff argues that the Town has a duty to conform its municipal land use decisions to the Town of West Warwick Comprehensive Plan (the "Comprehensive Plan") pursuant to the requirements of G.L. 1956 §45-22.2-13(c).[2] Plaintiff avers that in selling the Municipal Parking Lots, the Town acted in a manner that was inconsistent with and in violation of the Comprehensive Plan. Furthermore, Plaintiff claims that it has been and will continue to be adversely affected by the Town's alleged failure to conform its decision to the Comprehensive Plan. Specifically, Plaintiff contends that as a result of the Town's decision to sell the Municipal Parking Lots, patrons of the Registry are having difficulty parking in the vicinity. In addition, Plaintiff maintains that its ability to continue to lease the Property to the State or to attract future tenants may be adversely affected.
The Town, however, contends that any action it took was not in violation of the Comprehensive Plan. Rather, the Town argues that such action was consistent with the Comprehensive Plan, the Town's ordinances, the Home Rule Charter and the State's general laws. Specifically, the Town identifies § 45-53-2, which calls for cities and towns to provide opportunities for the establishment of low and moderate income housing.[3] The Town also points to an amended section of the Comprehensive Plan which *Page 4 
was put into place to address the issue of housing affordability in response to the State Housing Plan.[4] Moreover, the Town maintains that Plaintiff's claim should be dismissed because Plaintiff has failed to satisfy the requirement of standing or establish an actual case and controversy.
 Standard of Review
Pursuant to the Uniform Declaratory Judgments Act, the Superior Court is vested with the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section9-30-1. However, our Supreme Court "has consistently declared that the Superior Court is without jurisdiction under the Uniform Declaratory Judgments Act unless it is confronted with an actual justiciable controversy." McKenna v. Williams, 874 A.2d 217, 226 (R.I. 2005).See e.g. Meyer v. City of Newport, 844 A.2d 148, 151 (R.I. 2004);DeAscentis v. Pine, 729 A.2d 715, 717 (R.I. 1999). It is well established that the "constituent parts of a justiciable claim include `a plaintiff who has standing to pursue the action' and `some legal hypothesis which will entitle the plaintiff to real and articulable relief.'" McKenna v. Williams, 874 A.2d at 226 (quoting Meyer v. City ofNewport, 844 A.2d at 151). Upon review of the record before the Court, this Court finds that Plaintiff has failed to establish the necessary requirement of standing. For that reason, Plaintiff has not presented this Court with a justiciable controversy.
 Analysis
In deciding the issue of standing, this Court must consider whether Plaintiff is a proper claimant entitled to institute the subject action. In order to demonstrate the *Page 5 
requisite standing, a "plaintiff must allege to the court's satisfaction that `the challenged action has caused him injury in fact, economic or otherwise.'" McKenna v. Williams, 874 A.2d at 226 (quoting Rhode IslandOphthalmological Society v. Cannon, 113 R.I. 16, 22, 317 A.2d 124, 128
(1974)). An injury in fact is often characterized as "an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not `conjectural' or `hypothetical.'"Pontbriand v. Sundlun, 699 A.2d 856, 862 (R.I. 1997) (quoting Lujan v.Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Further, our Supreme Court has consistently found that a plaintiff lacks standing when they fail to demonstrate a personalized injury distinct from the community as a whole. See e.g. Meyer v. City of Newport, 844 A.2d at 151; Ianero v.Town of Johnston, 477 A.2d 619, 621 (R.I. 1984); Lamb v. Perry,101 R.I. 538, 542, 225 A.2d 521, 523 (1967).
In this instance, Plaintiff alleges that the Town impermissibly agreed to sell the Municipal Parking Lots to the Developer, and further, that Plaintiff has standing to raise such argument. With respect to the issue of standing, Plaintiff argues that the Town's decision to sell the Municipal Parking Lots will reduce the available public parking and that this reduction will adversely affect the value of the Property. Plaintiff claims that because of this possible adverse impact; Plaintiff has standing to bring the current action. In support of this proposition, Plaintiff cites to case law in which a claimant's status as a neighboring property owner afforded him or her standing to bring certain actions.
In particular, Plaintiff cites to Flynn v. Zoning Bd. of Review, a case which was decided prior to the enactment of the current General Laws, which address one's standing to appeal a zoning board decision.See Flynn v. Zoning Bd. of Review, 77 R.I. 118, 73 A.2d 808 (1950). Specifically, the court in Flynn held that "neither the enabling act nor *Page 6 
the zoning ordinance describes precisely who is an aggrieved person . . . [b]ut generally speaking the owner of property, the use of which naturally would be affected adversely by a decision granting an exception or variance, is considered to be an aggrieved person having a right to such a review." Id. at 122. Currently, § 45-24-31 of our General Laws does define who is an "aggrieved party" and, therefore, who is entitled to appeal a decision of a zoning board pursuant to §45-24-69. See § 45-24-31; see also § 45-24-69. Thus, the holding and reasoning in Flynn is no longer applicable to zoning board appeals. Moreover, this Court is not considering the standing of Plaintiff to bring a zoning board appeal. Rather, Plaintiff chose to bring the current action pursuant to the Uniform Declaratory Judgments Act and, as such, only Plaintiff's standing under the Act is at issue.
In addition, Plaintiff cites to Commerce Park Commons, LLC v. ImmunexMfg. Corp., No. 01-0860, July 2, 2002, Vogel, J. Similarly, this case addresses the right of a party to appeal a decision of a zoning board. As stated above, such standing is defined by § 45-24-69 and § 45-24-31
and is inapposite to Plaintiff's claim of standing pursuant to the Uniform Declaratory Judgments Act.
Plaintiff further relies on Blackstone Park Improvement Ass'n v. StateBd. of Standards Appeals, 448 A.2d 1233 (R.I. 1982). In this case, our Supreme Court found that the plaintiffs had standing to appeal a decision of the State Building Commissioner because they qualified as an aggrieved party under G.L. 1956 § 23-27.3-201,[5] which allowed for appeals to be taken by "property owners within 200 feet of the property line that is the subject of any appeal." Id. at 1235. Plaintiff's reliance on this case is *Page 7 
misplaced. The legislative conferral of standing to a party pursuant to a specific statute is completely inapplicable to Plaintiff's standing under the Uniform Declaratory Judgments Act.
As stated above, in order to establish standing under the Uniform Declaratory Judgments Act, a claimant must demonstrate that the challenged action has caused him or her an actual "injury in fact, economic or otherwise." McKenna v. Williams, 874 A.2d at 226. This Court finds that Plaintiff has failed to establish this indispensable injury in fact. Specifically, Plaintiff has failed to demonstrate that it had any "legally protected interest" in the perpetuation of the Municipal Parking Lots. Pontbriand v. Sundlun, 699 A.2d at 862. A reading of the complaint, in the light most favorable to Plaintiff, establishes that the Town did not enter into any agreement or arrangement with Plaintiff with respect to the availability of public parking. The only agreement referred to by Plaintiff is the Lease which bound only Plaintiff and the State. The Town was not a party to the Lease which has since expired. In addition, it is interesting to note that pursuant to the terms of the Lease, adequate parking was not even a condition to the tenancy of the State. Therefore, notwithstanding its affidavits, Plaintiff has failed to establish that it had any legally protected interest in the Town's continued maintenance of the Municipal Parking Lots as areas for public parking.
Rather, what Plaintiff has demonstrated is that the public at large had a right to use the Municipal Parking Lots to satisfy any parking needs. This right was a universal right which was equally vested in all citizens of the Town or visitors thereto. It was in no way a guarantee to Plaintiff of the availability of any spaces for its use or its tenant's use. Therefore, this Court finds that Plaintiff has "not asserted a `distinct personal legal *Page 8 
interest [that was] different from that of the public at large.'"Meyer v. City of Newport, 844 A.2d at 151 (quoting Lamb v. Perry,101 R.I. at 541, 225 A.2d at 522). Accordingly, Plaintiff has failed to prove that it has suffered an injury in fact as a result of the Town's actions.
Even assuming in arguendo that Plaintiff was able to establish a distinct personal legal interest; the extent to which Plaintiff may be injured by the Town's decision to sell the Municipal Parking Lots is both conjectural and hypothetical. Plaintiff alleges that as a result of the proposed residential construction, the number of parking spots open to the public will be reduced to approximately forty-one. Plaintiff, however, has failed to establish that a reduction in the amount of public parking spaces to forty-one would be insufficient for customers of the Registry or for customers of any other tenant to which Plaintiff may later lease. As stated above, the "Declaratory Judgments Act is a vehicle by which parties can obtain relief for actual or imminent harm."McKenna v. Williams, 874 A.2d at 227. Plaintiff has failed to establish such actual or imminent harm and has instead simply speculated as to theoretical harms.
Notwithstanding the above, Plaintiff asserts that it relied upon a reading of the Comprehensive Plan for the proposition that the Municipal Parking Lots would be used, in perpetuity, for public parking. This Court does not find such reliance to be justifiable based upon a complete reading of the Comprehensive Plan. Plaintiff, in support of its argument, cites to certain provisions of the Comprehensive Plan. These include a provision that lists an economic policy, which calls for the improvement of the availability, access, and condition of public parking in Arctic.[6] The Comprehensive Plan *Page 9 
also identifies lack of parking and the enforcement of parking regulations as a concern in Arctic Village.[7] Further, Plaintiff points out a section of the Comprehensive Plan which calls for the revitalization of Arctic as a viable commercial center of the Town.[8]
However, the provisions relied on by Plaintiff are cited in isolation and do not take into account other provisions of the Comprehensive Plan which address housing. Such provisions include policies which state a preference for implementing affordable housing efforts through a variety of housing types, including multi-family structures and congregate housing.[9] The Comprehensive Plan also lists a housing goal of promoting safe, sanitary, and well-constructed housing through new construction.[10] Further, the Comprehensive Plan calls for an amendment to the Town's Zoning Ordinance to allow, as a matter of right, multi-family housing in Village Commercial Districts.[11] As, an example of a Village Commercial District, the Comprehensive Plans lists the village of Arctic.
When charged with interpreting a statute, this Court must "`consider
the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections.'" In re Brown, 903 A.2d 147, 149
(R.I. 2006) (quoting Sorenson v. Colibri Corp., 650 A.2d 125, 128 (R.I. 1994)). It is well settled that such rules governing statutory interpretation are *Page 10 
equally applicable to the interpretation of an ordinance. See Jones v.Rommell, 521 A.2d 543, 544-545 (R.I. 1987); see also Mongony v.Bevilacqua, 432 A.2d 661 (R.I. 1981). As such, this Court finds that it is similarly appropriate to apply those maxims of interpretation to its reading of the Comprehensive Plan. Further, this Court has an obligation to view a document in its entirety, assigning a plain and ordinary meaning to its terms. See Rivera v. Gagnon, 847 A.2d 280, 284 (R.I. 2004); see also Rubery v. Downing Corp., 760 A.2d 945, 947 (R.I. 2000) (per curiam). Thus, this Court is bound to consider the Comprehensive Plan in its entirety. In doing so, this Court can find no merit in Plaintiff's argument that it reasonably relied on the language of the Comprehensive Plan for the proposition that the Municipal Parking Lots would never be developed or altered. In light of the above, this Court finds that Plaintiff has failed to demonstrate that the challenged action has caused Plaintiff an injury in fact. That is, Plaintiff has not established a concrete or actual invasion of any legally protected interest. See Pontbriand v. Sundlun, 699 A.2d at 862. Accordingly, Plaintiff does not possess the necessary standing to pursue this action against the Town.
 Conclusion
Upon review of the record before the Court, this Court finds that Plaintiff has failed to establish an actual justiciable controversy which is a prerequisite to the Superior Court's jurisdiction under the Uniform Declaratory Judgments Act. Specifically, Plaintiff lacks standing to bring the instant action. Accordingly, Plaintiff's complaint is dismissed and judgment shall enter in favor of the Town of West Warwick. Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] Having found a justiciable controversy lacking, this Court finds it unnecessary to consider Plaintiff's motion for summary judgment.
[2] Section 45-22.2-13(c) provides: "For those municipalities with comprehensive plans approved pursuant to this chapter all municipal land use decisions shall be in conformance with the approved municipal comprehensive plan."
[3] Section 45-53-2 provides, in part: "The general assembly finds and declares that there exists an acute shortage of affordable, accessible, safe, and sanitary housing for its citizens of low and moderate income, both individuals and families . . . that it is necessary that each city and town provide opportunities for the establishment of low and moderate income housing; and that the provisions of this chapter are necessary to assure the health, safety, and welfare of all citizens of this state."
[4] See Town of West Warwick Comprehensive Plan, § III, Supplement A.
[5] Section 23-27.3-201 is no longer in effect and currently, an "aggrieved party" under the State Building Code is defined by §23-27.3-127.1 (b)(2).
[6] Town of West Warwick Comprehensive Plan, § IV.5 ("Improve the availability, access and overall condition of public parking areas in Arctic.")
[7] Id. at § IV.3, Table I-11 (Identifies as an issue/concern: "Parking — lack of, and enforcement of parking regulations.")
[8] Id. at § IV, Supplement D ("Restoration of the Arctic Area as a viable commercial center is essential for the Town of West Warwick due to the central historical and social roles of this neighborhood.")
[9] Id. at § III.6 ("Give preference to affordable housing efforts that achieve development of a variety of housing types, including single family, two family, duplexes, accessory apartments, 3 and 4 family structures, congregate housing and other alternates for persons unable to live with complete independence.")
[10] Id. (Identifies a housing goal: "To promote a safe, sanitary and well-constructed housing stock through new construction and renovation of existing structures.")
[11] Id. at § III, Supplement A ("Amend the zoning ordinance to allow two-and multi-family housing in Village Commercial districts (i.e. Arctic) as a matter of right.")