DECISION
In this civil action, Plaintiff, Russell L. Houde, Sr., (hereinafter "Plaintiff" or "Houde"), asks this Court to declare that Plaintiff retained his classified employee status and his entitlement to the attendant benefits that come with that status, when his employer, the Blackstone Valley District Commission (hereinafter "BVDC"), merged into the Narragansett Bay Commission (hereinafter "NBC"). Plaintiff also asks this Court to award any additional relief that this Court may deem just and appropriate. The Defendant, the State of Rhode Island (hereinafter "Defendant" or "State"), seeks a dismissal of the suit. After the submission of memoranda,[1] an Agreed Statement of Facts, the introduction of numerous exhibits, and the testimony of the parties, the case proceeded to a full trial before this Court. Forthwith is this Court's decision. Jurisdiction is pursuant to G.L. 1956 § 9-30-1. *Page 2 
 I Facts and Travel
The following is an overview of the facts of this case. Other facts will be added as deemed necessary by the Court.
On August 22, 1971, Plaintiff began his career as a chemist with the State of Rhode Island. Working initially for the Department of Health, Plaintiff then worked for BVDC, a state-run agency. On June 17, 1991, pursuant to Public Laws 1991, Ch. 309, or G.L. 1956 § 46-25.1-1, the BVDC was intended to merge with the NBC. The planned merger of these commissions was an effort on the part of the State to consolidate two agencies with overlapping functions into one body. Despite the June 17, 1991 passage date of the merger legislation, the actual merger between the two commissions occurred on December 31, 1991. (Pl.'s Ex. B.)
Long before the merger, the enabling legislation of the NBC was codified by Public Laws 1980, Ch. 342., "Narragansett Bay Water Quality Management District Commission." The legislation included the following text of § 46-25-8:
 (b) Notwithstanding the provisions of any other law, no officer or employee of the state shall be deemed to have forfeited or shall forfeit his or her office or employment by reason of his or her acceptance of membership on the commission or his or her service thereto.
On November 20, 1991, Plaintiff achieved full-status in state employment, an event marked by the receipt of his certificate of twenty years of service as a state employee. (Pl.'s Ex. A.) "Full-status" is a tenured employment status, achieved under G.L. 1956 § 36-4-59, "Tenure in state service." Section 36-4-59, in pertinent part, reads as follows: *Page 3 
 (a) Every person who shall have twenty (20) years, not necessarily consecutive, of service credit, the credits having been earned in either the classified, nonclassified, or unclassified service of the state or a combination of both, shall be deemed to have acquired full status in the position he or she holds at the time of obtaining twenty (20) years of service credit.
 . . .
 (2) (ii) That in case of layoff or the abolition of a position through reorganization or otherwise, any person in that position or subject to layoff, who has full status, otherwise qualified under this section, shall be retained within the state services in a position of similar grade.
As a result of Plaintiff's full-status, he could only be fired from his position for cause, and should his position be abolished or reorganized, Plaintiff was entitled to a lateral move within the same pay grade to a comparable state position.
In November and December of 1991, members of the NBC met with plaintiff to discuss his future employment in light of the impending merger and his then-current status as a classified, full-status employee. Since the NBC was to operate as a quasi-public corporation, the NBC attempted to remove any and all classified positions from its ranks.
At a meeting on December 17, 1991, Plaintiff orally expressed interest in taking a nonclassified position. Plaintiff expressed his desire to receive the benefits of the nonclassified job at NBC and requested that the State administrators send him the contract. Later, however, Plaintiff refused to sign the contract or waive his full-status. Plaintiff mailed the contract back to NBC with a note indicating that he intended to keep his classified position while working for NBC. Subsequently, NBC made numerous attempts to process the paperwork that would have formally altered Plaintiff's status. *Page 4 
The merger legislation of NBC was passed during the January session of 1991. General Laws, Chapter 46-25, "Narragansett Bay Water Quality Management District Commission," was amended to include Chapter 25.1. Section 46-25.1-1, "Merger-Effective date — Transfer of assets and assumption of liabilities," in pertinent part, reads as follows:
 (a) Subject to the approval of the Narragansett Bay Water Quality Management District Commission, the Blackstone Valley District Commission shall be merged with and into the Narragansett Bay Water Quality Management District Commission. Upon such merger, the Blackstone Valley District Commission shall cease to exist.
 . . .
 (c) The merger shall be effective no later than December 31, 1991. . . .
 (e) On the date of the merger, . . . all persons employed by the Blackstone Valley District Commission on the date of the merger shall be deemed employees of the Narragansett Bay Water Quality Management District Commission. . . .
After the merger technically occurred on December 31, 1991, Plaintiff continued to work as a Supervising Chemist for NBC. Plaintiff refused to seek a transfer within the state employment system. Plaintiff's transfer to a job of a similar grade was guaranteed by his full-status under the State's Merit System; yet, he chose not to avail himself of that opportunity despite the employment changes which appear to have pervaded his workplace.
Plaintiff asserts that he was informed that his classified position and his enrollment in the State Employee's Retirement Plan would continue for three years from the December 31, 1991 merger date. (Pl. Ex. M.) However, the change in Plaintiff's classified status was made on or about December 7, 1992. Plaintiff was informed of this *Page 5 
change in a letter addressed to him stating that he must sign a new employment contract with NBC because his former position had been abolished.
Unhappy with the status change and unwilling to transfer laterally, Plaintiff fought to reinstate his classified position with the Personnel Appeal Board during February and March of 1994. Plaintiff and two other formerly classified employees claimed relief under G.L. 1956 § 36-4-42, "Appeal from appointing authority to appeal board." Before the Board, Plaintiff argued that his position was, "arbitrarily changed from a classified to an unclassified position." Id. Plaintiff's appeal was denied by the Board in a decision dated September 19, 1995. (Pl.'s Ex. P.) The Board denied the appeal because the Plaintiff claimed relief under a section which requires an aggrieved party to feel he or she has been either demoted by an action of the appointing authority or by a personnel action believed to discriminatory on the basis of "race, sex, age, handicap, religious or political beliefs." The Board found the jurisdictional parameters of Plaintiff's appeal were inapplicable to address the change in the status of his employment since there was no allegation of discrimination. Id.
Plaintiff then appealed the Board's decision to the Superior Court for review under G.L. 1956 § 42-35-15. In that decision, the Court affirmed the Personnel Appeal Board's dismissal of the action on jurisdictional grounds. Carrier v. Personnel Appeal Board, No. 95-5591, May 10, 1996, Krause, J. While the Court disagreed with the Board's interpretation of the discrimination statute, the Court affirmed the dismissal of the appeal because Plaintiff failed to allege any action resulting in his demotion or discriminatory treatment. Id. at 2. *Page 6 
The Plaintiff, in Carrier, then appealed to the Supreme Court. 701 A2d. 1027 (R.I. 1997). The Court denied his appeal for failure to seek review upon a petition for certiorari, holding that review under §42-35-15 was not the proper procedure for Supreme Court review.Id. at 1028. In the written order, however, the Supreme Court noted that:
 In 1991, as a result of the merger between the Blackstone Valley District Commission and the NBC, the plaintiffs were notified to make an election to become either non-classified employees of the NBC or to exercise an option to obtain equivalent employment elsewhere in state government. The plaintiffs failed to make their election, and on January 18, 1994, they were notified by the NBC that they would be considered non-classified employees.
Despite the unsuccessful litigation, Plaintiff remained at NBC and continued to work in his position as a Supervising Chemist. Plaintiff materially benefited from the changes at NBC and in the changes of his employment status from classified to nonclassified. Plaintiff no longer had the mandatory 8.625% of his yearly salary deducted for payment into the State Employees Retirement Plan. NBC enrolled Plaintiff in its fully funded Simplified Employee Pension Plan ("SEPP"). Enrollment in SEPP came at no cost to Plaintiff and its approximate value per year was 10% of Plaintiff's salary. Also, Plaintiff received a pay increase because he was a nonclassified employee. In sum, Plaintiff no longer had to withhold his former, mandatory pension payments, and his salary increased as a nonclassified employee. In fact, Plaintiff took home over $10,000 per year more than his classified salary. Additionally, Plaintiff voluntarily enrolled himself in NBC's no-cost Long Term Disability Plan. This insurance plan was not otherwise available to classified employees; it was only available to Plaintiff and other nonclassified employees. *Page 7 
The legislation of NBC was further amended in 1999. Public Laws 1999, Ch. 225., Section 1 added the following text to § 46-25-8:
 (c) . . . Employees of the commission shall not, by reason of their employment, be employees of the state for any purpose, any provision of the general laws contrary notwithstanding, including, without limiting the generality of the foregoing, chapters 29, 39, and 42 of title 28 and chapters 4, 8, 9, and 10 of title 36. Those employees of the commission who were employed prior to June 30, 1999, shall continue to be covered by §§ 36-4-59, 36-5-7 and 36-5-8. The employees are not entitled to the provisions of §§ 36-4-59, 36-5-7
and 36-5-8 while employed by the commission. The employees are only entitled to the provisions of these statutes in the event that any such employee returns to employment in the classified service in a department within the executive branch.
The passage of this section finalized the NBC's privatization by mandating that all employees of NBC would be outside the state system.
In April, 2000, NBC consolidated many of laboratory positions. As a result, Plaintiff was informed that he was being terminated from employment. Though he was ordered to stop work in April, Plaintiff was paid through May 22, 2000. At no point did NBC give a reason or cause to terminate Plaintiff from employment.
Between June 2000 and January 2002, Plaintiff applied for eight different state positions. Plaintiff was not hired for any position. On April 16, 2002, Plaintiff initiated the current suit against NBC and the State. NBC was subsequently dismissed from the suit. In the interim, Plaintiff officially retired on December 12, 2002.
 II Standard of Review
The Uniform Declaratory Judgments Act vests the Court with "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." G.L. 1956 § 9-30-1. In so doing, the Court strives "to settle and to afford relief *Page 8 
from uncertainty and insecurity with respect to rights, status, and other legal relations." Section 9-30-12; see also Capital Props., Inc.v. State, 749 A.2d 1069, 1080 (R.I. 1999) (citations omitted). In order for the Court to exercise its jurisdiction under the Uniform Declaratory Judgments Act, an actual, justiciable controversy must be before it.Meyer v. City of Newport, 844 A.2d 148, 151 (R.I. 2004). "By definition, a justiciable controversy must contain a plaintiff who has standing to pursue the action. . . ." Id. A plaintiff seeking declaratory judgment must have suffered an "injury in fact." Id. In other words, a plaintiff must allege an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Id. "Furthermore, justiciability is not present unless the facts of the case yield some legal hypothesis which will entitle the plaintiff to real and articulable relief." Id.
A decision to grant a remedy under the Uniform Declaratory Judgments Act is "purely discretionary." Woonsocket Teachers' Guild Local Union951, AFT v. Woonsocket Sch. Comm., 694 A.2d 727, 729 (R.I. 1997). "Thus, even if the complaint contains a set of facts which bring it within the scope of our declaratory judgments act, there is no duty imposed thereby on the court to grant such relief, but rather the court is free to decide in the exercise of its discretion whether or not to award the relief asked for." Employers' Fire Ins. Co. v. Beals, 103 R.I. 623, 628,240 A.2d 397, 401 (1968).
In a non-jury trial, the standard of review is governed by Rule 52(a) of the Rhode Island Superior Court Rules of Civil Procedure which provides that "in all actions tried upon the facts without a jury . . . the court shall find the facts specifically and state separately its conclusions of law thereon. . . ." Accordingly, "the trial justice sits as the trier of fact as well as of law." Hood v. Hawkins, 478 A.2d 181,184 (R.I. 1984). In a *Page 9 
non-jury trial, it is the duty of the trial justice to weigh and consider the evidence, pass upon the credibility of witnesses, and draw proper inferences. See id.
When a case is tried without a jury, "[t]he task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." McEntee v. Davis, 861 A.2d 459, 464 (R.I. 2004) (quoting Bogosian v. Bederman, 823 A.2d 1117, 1120 (R.I. 2003)). This is so, because the factual determinations and credibility assessments of a trial justice traditionally is accorded "a great deal of respect . . . [because it is] the judicial officer who actually observe[s] the human drama that is part and parcel of every trial and who has had the opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." In the Matter of the Dissolution of Anderson, Zangari Bossian, 888 A.2d 973, 975 (R.I. 2006). Although the trial justice is required to make specific findings of fact, "`brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case.'" Parella v. Montalbano,899 A.2d 1226, 1239 (R.I. 2006) (quoting Donnelly v. Cowsill, 716 A.2d 742,747 (R.I. 1998)).
 III Plaintiff's Arguments
Plaintiff claims that his constitutional and due process rights have been violated as a result of a series of actions taken by the State. Plaintiff asserts that his termination without cause deprived him of his due process rights under § 36-4-59, pursuant to which he possessed a legitimate claim of entitlement by his full-status as a tenured state employee. This status ensured Plaintiff that he could only be removed from his classified position for cause and that if his position were ever abolished by statute or *Page 10 
reorganization, he would be entitled to a lateral move to another comparable position within the state system. Plaintiff argues that, as a full-status employee, the State could not take Plaintiff's classified position from him without paying him just compensation.
Plaintiff claims in his Amended Trial Memorandum that he received no notice and had no knowledge that his classified position would be converted into a nonclassified position. Plaintiff notes that he never resigned his full-status and never accepted the nonclassified status change. Further, while admitting that he had expressed some interest in becoming a nonclassified employee, Plaintiff maintains he could not, and did not, orally waive his full-status. At all relevant times, Plaintiff protested the divestment of his nonclassified position.
Plaintiff further argues that the merger of BVDC with NBC could not divest him of his classified position without paying him just compensation. While alluding to the aforementioned statutory inconsistency, Plaintiff relies on Wilkinson v. The State CrimeLaboratory Commission, et al. to support his argument that absent explicit statutory language, non-specific statutory changes are insufficient to terminate the vested rights of a state employee.788 A.2d 1129, 1140-1141 (R.I 2002). Thereby, Plaintiff argues that the enabling legislation of the NBC contained no explicit provision which addressed the divestment of full-status, classified employees who continued to work at NBC. Absent such language in § 46-25-8, Plaintiff contends that no divestment could have altered Plaintiff's status. In the event that the legislation did divest Plaintiff of his status, Plaintiff maintains that the property right he lost must be compensated for by the State.
Plaintiff further maintains that his election to remain an employee of NBC could not divest him of his classified position. Plaintiff notes that on August 22, 1996, he *Page 11 
received his certificate of 25 years of state service while employed by NBC. (Pl.'s Ex. S.) Additionally, Plaintiff notes that there were other classified employees who stayed with NBC after the merger.
 IV Defendant's Arguments
The State denies that Plaintiff's classified position was converted to nonclassified without notice and just compensation. The State's rebuts Plaintiff's alleged constitutional violation and due process taking argument by noting that Plaintiff was favorably compensated at NBC. The State argues that Plaintiff's classified position was converted with sufficient notice to him.
The State contends that Plaintiff's seminal case, Wilkinson, actually supports the Defendant's denial of Plaintiff's classified benefits because he received the full panoply of constitutional protections while subsequently employed at NBC. In sum, the benefits that Plaintiff received at NBC constituted the just compensation for any taking that State may have done by divesting Plaintiff of his classified position. The State maintains that due process was afforded to Plaintiff because he was given sufficient notice of the change in his position and he had ample opportunity to transfer.
The State claims that, on December 17, 1991, Plaintiff made an oral election to transfer from a Supervisory Sanitary Chemist, Grade 30, classified, to Supervisory Sanitary Chemist, Grade 30, nonclassified, effective upon the merger of BVDC into NBC. (Def.'s Anwers to Pl.'s Interrogatories, Response to Interrogatory No. 2.) The State maintains that, although Plaintiff refused to sign the paperwork to effect the *Page 12 
relinquishment of his classified status, his oral waiver was sufficient to convert his status to a nonclassified position.
The State also argues that Plaintiff's previously unsuccessful litigation regarding the loss of his classified position under § 36-4-59
operates to bar the present adjudication of his suit by way of collateral estoppel or res judicata. Additionally, the State cites the ten-year delay in litigating the divestment of his classified position equitably bars the current suit by way of laches.
 V Analysis A Status of Plaintiff's Position with NBC
The central issue before this Court is whether NBC's employment of Plaintiff, as a formerly classified full-status chemist, was converted into an nonclassified position upon the completion of the merger of BVDC into NBC. The State argues that Plaintiff's status was converted with his knowledge and with just compensation. Plaintiff argues that his status was arbitrarily changed and that he is constitutionally entitled to compensation for the taking.
Given the NBC's trend toward privatization, which ripened into the 1999 addition to § 46-25-8 — "Employees of the commission shall not, by reason of their employment, be employees of the state for any purpose" — it is clear that there was a tension between the newly merged NBC and Plaintiff's meritorious achievement of full-status and classified under § 36-4-59.
The Supreme Court has previously addressed the issue of a state employee's reliance on governmental conduct and its representations that were in conflict with the *Page 13 
applicable law. The Court in Romano v. Retirement Board of the EmployeesRetirement System of the State of Rhode Island held that "[T]he doctrine of equitable estoppel should not be applied against a governmental entity like the board when, . . . the alleged representations or conduct relied upon were ultra vires or in conflict with applicable law."767 A.2d 35, 38 (R.I. 2001). In that case, the plaintiff argued that he relied on the representations of a state retirement counselor which were explicitly prohibited by law. The Court refused to apply equitable estoppel against the state because the statements of the retirement counselor were ultra vires. The Court further noted that state employees dealing with a state agent may not reasonably rely upon actions which exceed that agent's actual authority. Id. at 43.
The Court has also held that "Neither a contrary long-standing practice of the parties nor the renegade legal interpretations of a high-ranking state official can override a state law that plainly provides otherwise." State of Rhode Island v. Rhode Island Alliance ofSocial Service Employees, Local 580, SEIU, 747 A.2d 465, 470 (R.I. 2000). There, the Court held that the ultra vires acts of a state entity will not be upheld in the face of a plainly contrary statute. In sum, our Supreme Court has consistently held that even the reasonable representations of a state agent will not be subsequently upheld when they conflict with applicable law.
These cases apply to the instant controversy. The possibility that Plaintiff could maintain his full-status at NBC contradicted NBC's legislation. Section 46-25-8. The totality of the state's effort to officially convert Plaintiff's status demonstrates that the state recognized the ultra vires effect of having a classified employee at NBC. Simply put, a classified employee could not work at NBC. Even if Director of NBC, Paul *Page 14 
Pinault, told Plaintiff that he could continue to work at NBC as a classified full-status employee, such an ultra-vires representation could not be upheld because it plainly flouts the applicable law.
The Court in Wilkinson specifically addressed the issue of overlapping employment in the state system and the ensuing status of a fully vested classified employee. There, the Court held:
 [A]n employee who has achieved permanent classified status in his or her employment with the state has a property right in continued government employment and is entitled to due-process before he or she can be deprived of that property right. On the other hand, a classified employee is not totally insulated from termination. For example, if the state determines that cause exists to terminate the employee or that it is necessary to lay off, reorganize, or otherwise abolish a classified employee's position, it is entirely possible, and even probable, that such a decision would be upheld "for the good of the service" — unless the decision was arbitrary, pretextual, or irrational. But a rational, non-pretextual, and non-arbitrary employment decision would provide cause for termination — provided, of course, that procedural due-process rights were duly afforded to the terminated employee. 788 A.2d at 1138.
There is nothing in the record to indicate that Plaintiff's loss of his classified position was arbitrary, pretextual, or irrational. Rather, a plain reading of § 46-25-8, coupled with the State's repeated efforts to formalize Plaintiff's status conversion and Plaintiff's acceptance of the benefits of nonclassified employment, show that all parties were aware that continuing classified employment with NBC was impossible. The State's efforts to "process the paperwork" that converted Plaintiff's status were never memorialized because the Plaintiff refused sign any document to that effect. However, such a refusal cannot operate to contravene the law. *Page 15 
 B Tacit Waiver
Plaintiff argues that there has been a taking of his constitutionally protected entitlement to his classified position. The State contends that Plaintiff either orally waived his classified position or that he tacitly waived his full-status protection of that classified position by failing to seek alternative employment within the state system.
The Rhode Island Supreme Court has held that a "[w]aiver is the voluntary intentional relinquishment of a known right." Haxton's ofRiverside, Inc. v. Windmill Realty, Inc., 488 A.2d 723, 725 (1985) (quoting Pacheco v. Nationwide Mutual Insurance Co., 114 R.I. 575, 577337 A.2d 240, 242 (1975)). The Court has further held that "[a] waiver arises by the intentional relinquishment of a right by a person or party, or by his neglect to insist upon such right at the proper time. . . ." Metcalf v. Phenix Insurance Co., 21 R.I. 307, 309,43 A. 541, 542 (1899).
The fact that Plaintiff contends he had no knowledge that his status would be converted contradicts several case facts. In December of 1991, Plaintiff was made aware that his status would be converted to nonclassified if he remained at NBC. Plaintiff knew that his full-status entitled him to laterally "bump" to a state position of the same pay grade. Yet, Plaintiff continued in his position at NBC without heeding the warning signs. Similarly, Plaintiff's argument that he is owed just compensation appears to disregard the multitude of benefits he enjoyed as a nonclassified NBC employee. He received significantly more take-home pay, less deductions, a fully-funded pension account, and long-term disability insurance at no cost. When these benefits are viewed in the same light as Plaintiff's subjective awareness that his status was being converted, Plaintiff's claims fail. *Page 16 
Pursuant to the Wilkinson standard, Plaintiff's employment at the NBC became that of a nonclassified Supervising Chemist. Plaintiff was well aware and fully informed of the structural changes that his position was undergoing as BVDC merged into NBC. NBC's repeated attempts to finalize and confirm the conversion of Plaintiff's full-status, classified position into an unclassified position were never memorialized because Plaintiff refused to sign any document to that effect. Yet, Plaintiff knew this change was taking place. His objections to the status change are well documented in the record of this case and they are supported by his previous attempt to litigate the status conversion. This evidence strongly points to Plaintiff's awareness of the loss of his classified position, despite his denial. The effort adduced by Plaintiff to remain in the nonclassified position at NBC, with the status of a classified employee, constituted a waiver of his right to remain in another classified position. Plaintiff's knowing failure to exercise his right to seek alternative state employment operated as a tacit waiver of his classified position and the benefits thereof. Plaintiff voluntary relinquished his right to remain in a classified position by continuing to work for NBC and receiving the benefits of the nonclassified position. See Metcalf, 21 R.I. at 309.
 C Collateral Estoppel and Laches
Even though this Court bases its decision on other grounds, the Court will nevertheless address the State's defenses, neither of which is dispositive in this matter. The State argues that Plaintiff is either collaterally estopped from asserting his current claim or that he has unreasonably waited too long bring the current suit. Plaintiff has not defended his claims against either argument. *Page 17 
The Supreme Court of Rhode Island has held that the doctrine of collateral estoppel prevents the re-litigation of an issue actually litigated and determined between the same parties or their privies.Casco Indemnity v. O'Connor, 755 A.2d 779, 782 (R.I. 2000). "For collateral estoppel to apply, three factors must be present: `there must be an identity of issues; the prior proceeding must have resulted in a final judgment on the merits; and the party against whom the collateral estoppel is sought must be the same as or in prvity with the party in the prior proceeding.'" Id. (quoting Commercial Union Insurance Co. v.Pelchat, 727 A.2d 676, 680 (R.I. 1999)).
In the instant case, the first factor of the collateral estoppel test is met because there is an identity of the issue. Plaintiff is challenging the loss of his classified position and the attendant benefits that came with it. However, the second factor of theCommercial Union test is incomplete in the instant case. While plaintiffs in the prior proceeding of Carrier appealed to the Supreme Court, their case was denied on jurisdictional grounds. Thus, there was no adjudication on the merits. 701 A2d. 1027. The Court inCarrier did not issue a written decision in that case, but, rather, it issued an order. While orders are not explicitly authoritative or binding precedent, they can lend evidentiary support and can indicate judicial criticism of a subsequent claim. See Daigneault v. PublicFinance Corporation of Rhode Island, 562 F. Supp. 194, 198 (R.I. 1983). Therefore, the prior litigation of Plaintiff's claim does not conclusively bar his current suit. Lastly, the third CommercialUnion factor is met in the instant case. The State, which is in privity with NBC, was, and is defending its actions against the same plaintiff, Houde. Therefore, collateral estoppel does not bar Plaintiff's current suit. *Page 18 
The State claims that Plaintiff's suit is barred by laches. The State has cited Northern Trust Co. v. Zoning Board of Review of Town ofWesterly to support the argument that Plaintiff effectively relinquished his claim by sitting on his rights for an unreasonable time. By not pursuing a cause of action for over twenty years, the plaintiff inNorthern Trust could not subsequently challenge the legality of a subdivision because the doctrine of laches equitably barred his suit.899 A.2d 517, 519-520 (R.I. 2006).
The doctrine of laches is more appropriately applied to instances where one party unreasonably and prejudicially fails to seek relief to which he may have been entitled. Our Supreme Court noted, in Chase v.Chase, that
 Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief. 20 R.I. 202, 203-204 (1897).
The plaintiff in Chase waited sixteen years to assert a claim of right and seek relief. The Court applied the doctrine of laches to dismiss his suit because the testimony of necessary witnesses would no longer have been possible and the Court noted that waiting so long operated as a waiver of the rights asserted. Id. at 205-208.
In the instant case, the evidence reflects that Plaintiff did not unreasonably wait to assert a claim against the State. The Exhibit List is replete with Plaintiff's numerous and *Page 19 
unsuccessful attempts to challenge the divestment of his classified position. Consequently, the defense of laches fails to aid the State in dismissing Plaintiff's suit.
 VI Findings of Fact and Conclusions of Law
This Court makes the following findings of fact:
 (1) The Court hereby adopts all of the Agreed Facts submitted by the parties and incorporates them by reference. (Exhibit 1, appended hereto.)
 (2) Plaintiff vested under the State's Merit System after twenty years of State employment.
 (3) At the time of Plaintiff's vesting, he was working as a classified employee.
 (4) Classified, nonclassified, and unclassified employees who attain twenty years of state service are entitled to the protections of the State's Merit System.
 (5) Only classified employees had access to the State's Employee Retirement System.
 (6) Only nonclassified employees at NBC had access to the Simplified Employee Pension Plan.
 (7) State agents cannot extend authority to State employees beyond what exists under applicable law.
 (8) By continuing to work for NBC, Plaintiff became ineligible for the State's Employee Retirement Program.
 (9) At the time of the merger, Plaintiff was forced to make an election to choose a lateral move within State employment or he could remain with NBC and his status would be converted from classified to nonclassified. *Page 20 
 (10) Before the merger Plaintiff was informed that his position would be converted into a nonclassified position.
 (11) Plaintiff elected not to seek a transfer to another State job at the same pay grade while employed by NBC.
 (12) At the December 17, 1991 meeting, Plaintiff orally elected to take the nonclassified position.
 (13) The Court finds that the testimony of the State's witnesses — Denise Mello, Paul Pinault, and Anthony Bucci — was more credible than the Plaintiff's testimony with regard to the issue of whether or not Plaintiff agreed to transfer into the nonclassified position at the December 1991 meeting.
 (14) By the totality of his conduct, Plaintiff waived his option to remain in the classified service of State employment.
 (15) By his tacit acceptance of all the benefits of the nonclassified position at NBC, Plaintiff waived his right to challenge the divestment of his status.
 (16) The Court adopts the State's interpretation of Wilkinson and finds that Plaintiff received notice of his status change and just compensation for that taking.
 (17) After the merger, the retention of a classified state employee at NBC would have been ultra vires.
 VII Conclusion
Plaintiff effectively and tacitly waived his right to remain as a classified employee by continuing to work for the NBC. Although he did not formally waive that right, Plaintiff knew that his position was being absorbed by the NBC. A classified employee *Page 21 
at NBC would have been ultra vires and incompatible with State law. Given the NBC's prohibition of classified employees and the State's efforts to convert Plaintiff's status, Plaintiff waived his right to move laterally to a new position by failing to exercise that option. This waiver and the just compensation he received while employed by NBC satisfy the Wilkinson requirements that the divestment of a full-status position from a State employee must be compensated. Accordingly, Plaintiff's Petition for a Declaratory Judgment is denied in its entirety, and his Complaint is dismissed. Counsel may enter an order consistent with this decision.
[1] Defendant submitted a Post Trial Memorandum regarding an issue raised by the Court at trial. The Court reaches its decision after careful review of all memoranda submitted. *Page 1