**N & M PROPERTIES, LLC**

v.

**TOWN OF WEST WARWICK By and Through its Finance Director, Malcolm MOORE.**

No. 2008–17–Appeal.

Supreme Court of Rhode Island.

Feb. 27, 2009.

Jeffrey S. Brenner, Esq., Providence, for Plaintiff.

Timothy A. Williamson, Esq., Coventry, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Chief Justice WILLIAMS (ret.), for the Court.

This matter comes to us on the appeal of the plaintiff, N & M Properties, LLC (plaintiff), from the motion justice's dismissal of the plaintiff's complaint. After conducting a hearing, the motion justice determined that the plaintiff had failed to demonstrate a distinct, personal legal interest in the property at issue and thus lacked the requisite standing to bring suit against the Town of West Warwick (town or defendant) under the Uniform Declaratory Judgments Act (UDJA), G.L. 1956 chapter 30 of title 9. It is because the motion justice denied and dismissed the action below that the plaintiff is before us today.

This case came before the Supreme Court for oral argument on January 27, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further argument or briefing. For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The plaintiff is the owner of real property located at 1237 Main Street, West Warwick, Rhode Island (Main Street proper-

ty). In 1990, plaintiff entered into a lease agreement with the State of Rhode Island, pursuant to which the state would use the Main Street property as a Motor Vehicle Registry (Registry) for the state's Division of Motor Vehicles. The most recent lease agreement between plaintiff and the state was effective for a term of five years, running from January 1, 2002 until December 31, 2006. Pursuant to the terms of the lease, the state retained the right to extend the lease for an additional five-year term upon its expiration. If extended, that new lease would commence on January 1, 2007. The lease that began on January 1, 2002, expired on December 31, 2006, but the state did not exercise its option to renew the lease for another five-year term. Instead, the state continued to operate the Registry on the Main Street property and remained a holdover tenant on a month-to-month basis. Notably, at oral argument, the parties concurred that after the filing of this appeal, the state closed the registries in both West Warwick and Westerly for budgetary reasons.

The underlying dispute concerns the relationship between the Main Street property and two nearby municipal parking lots. Since 1969, the town has owned two parcels of real property in West Warwick, both located in close proximity to the Main Street property; those two parcels have been used as municipal parking lots to provide parking in the vicinity of the parcels. According to plaintiff, patrons of the Registry historically have parked in these municipal parking lots when going to the Registry.

In May 2006, at West Warwick's annual financial meeting, the town authorized the sale of the municipal parking lots. Two months later, on July 17, 2006, the town passed Ordinance No. 2006–14, creating the Arctic Design Control District, which was intended to revitalize the neighborhood known as Arctic Village in West Warwick. That same day, the West Warwick Planning Board heard an application for a comprehensive permit from The Women's Development Corporation and WildBerry Apartments, Inc. (developer), in which the developer proposed to build low- and moderate-income housing in Arctic Village. On August 7, 2006, the planning board approved this application, and the next week the West Warwick Town Council voted to sell the municipal parking lots to the developer. Upon completion of this project, the available parking in the municipal parking lots was projected to decrease from approximately one hundred spaces to about forty spaces. At around the same time, the town also decided to designate fifty-nine additional parking spaces on the street, which could be used by patrons of the Registry.

Because of this sale of the parcels to the developer, plaintiff filed the underlying declaratory-judgment action against the town on October 2, 2006, pursuant to the UDJA. The plaintiff asked the Superior Court to declare that the town unlawfully, impermissibly, and without authority agreed to sell the municipal parking lots to the developer because such residential development was inconsistent with the West Warwick Comprehensive Community Plan (comprehensive plan).

The plaintiff subsequently filed a motion for summary judgment. The defendant objected to this motion, contending that plaintiff lacked standing to bring the instant action because plaintiff did not have an injury distinct from the general public. The defendant asked the Superior Court to deny plaintiff's motion for summary judgment and dismiss the complaint. To counter defendant's argument that plaintiff

lacked standing, plaintiff argued at the hearing on its motion for summary judgment that it was unable to secure a new long-term lease with the state for the Registry to operate on the Main Street property because of the uncertainty surrounding the number of available parking spaces. The plaintiff also argued that the sale at issue significantly diminished the number of parking spaces that Registry customers could use.

After hearing the arguments of both parties, the motion justice denied plaintiff's motion for summary judgment and issued a written decision. The motion justice explained that plaintiff had failed to demonstrate injury in fact—namely, that plaintiff lacked a distinct personal legal interest in preserving the municipal parking lots. She also noted that plaintiff had never been guaranteed any parking spaces in either lot.

After the motion justice dismissed plaintiff's complaint, plaintiff filed a motion for reconsideration. In its motion, plaintiff alleged that it had endured a specific harm as demonstrated by newly discovered meeting minutes from the State Properties Committee, in which the state had expressed concerns about the decreased municipal parking in the vicinity of the Registry. The minutes also indicated that the Division of Motor Vehicles' ultimate goal was to consolidate all Division of Motor Vehicle branches at the Pastore Complex in Cranston over the subsequent three to four years. The motion justice denied plaintiff's motion for reconsideration, explaining that even in light of this supplementary information, plaintiff still had not demonstrated a particularized harm. Final judgment was entered on June 12, 2007, and plaintiff timely appealed to this Court.

## II

## Analysis

On appeal, plaintiff contends that the motion justice erred in ruling that plaintiff had failed to demonstrate that it had standing to bring a claim under the UDJA. The plaintiff argues that it indeed suffered an individualized, concrete, and articulable injury when the town decreased the nearby municipal parking. The plaintiff asserts that it has demonstrated an injury in fact: the state refused to renew its lease with plaintiff for the five-year option period because of parking concerns resulting from the sale of the municipal parking lots.

### A

### Standard of Review

"When reviewing an appeal based on an alleged error of law, this Court employs a *de novo* review to determine whether the [motion] justice committed legal error." *State v. Jennings*, 944 A.2d 171, 173 (R.I.2008). *See also Bowen v. Mollis*, 945 A.2d 314, 316 (R.I.2008). Our review is *de novo* because "this Court is in the best position to decide the merits of a given question of law." *Lett v. Providence Journal Co.*, 798 A.2d 355, 363 (R.I.2002) (quoting *Votolato v. Merandi*, 747 A.2d 455, 460 (R.I.2000)).

### B

### Standing

The UDJA vests the Superior Court with the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9–30–1. The threshold determination when confronted with a claim under the UDJA is whether the Superior Court is presented with an actual case or controversy. *Bowen*, 945 A.2d at 317. Without making this initial determination, the court does not have jurisdiction

to entertain the claim. *Id.*[1]

■ For a claim to be justiciable, two elemental components must be present: (1) a plaintiff with the requisite standing and (2) "some legal hypothesis which will entitle the plaintiff to real and articulable relief." *Bowen*, 945 A.2d at 317 (quoting *McKenna v. Williams*, 874 A.2d 217, 226 (R.I.2005)). We laid out our principles for the standing requirement in *Rhode Island Ophthalmological Society*, in which we adopted the principles employed by the United States Supreme Court. *Rhode Island Ophthalmological Society v. Cannon*, 113 R.I. 16, 26, 317 A.2d 124, 129 (1974) ("It is our belief that standing can now be determined by our adoption of the first of the [*Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153–54, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) ] criteria. The question is whether the person whose standing is challenged has alleged an injury in fact resulting from the challenged statute. If he has, he satisfies the requirement of standing."). Our subsequent case law has elucidated these rules further.

■ To determine whether a plaintiff has standing to sue, the court must focus "on the party who is advancing the claim rather than on the issue the party seeks to have adjudicated." *Bowen*, 945 A.2d at 317. The standing inquiry is satisfied when a plaintiff has suffered "some injury in fact, economic or otherwise." *Id.*; *Meyer v. City of Newport*, 844 A.2d 148, 151 (R.I.2004). We have defined injury in fact as "an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not 'conjectural' or 'hypothetical.' " *Pontbriand v. Sundlun*, 699 A.2d 856, 862 (R.I.1997)

(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). We also have recognized the importance of the personal nature of a plaintiff's injury and have held that a plaintiff must "demonstrate a personalized injury distinct from that of the community as a whole." *Meyer*, 844 A.2d at 151.

■ The second requirement for justiciability is that "the facts postulated yield to some conceivable legal hypothesis which will entitle the plaintiff to some relief against the defendant." *Goodyear Loan Co. v. Little*, 107 R.I. 629, 631, 269 A.2d 542, 543 (1970) (citing 1 Anderson, *Actions for Declaratory Judgments* § 14 at 59 (2d ed. 1951)). A well-respected treatise has explained that "[w]here a concrete issue is present and there is a definite assertion of legal rights coupled with a claim of a positive legal duty with respect thereto which shall be denied by adverse party, then there is a justiciable controversy calling for the invocation of the declaratory judgment action." 1 Anderson, § 14 at 62. If the court determines that there is no justiciable controversy, "the court can go no further, and its immediate duty is to dismiss the action * * *." *Id.*, § 9 at 49–50.

■ In the instant matter, plaintiff takes issue with the motion justice's determination that it lacked standing for want of suffering some injury in fact, and it contends that the decrease in municipal parking will lead to a decrease in the value of plaintiff's property. Upon our review of the record, however, it appears that plaintiff has failed to demonstrate an injury in fact. The plaintiff did not enjoy any special ownership rights or privileges with respect to the municipal parking lots. Its

---

1. Notwithstanding the issue of apparent mootness presented by the recent closure of the West Warwick branch of the Registry, we reach the issue of whether plaintiff has standing.

right to have access to these municipal parking lots was not different from the right of any other business or member of the public. The plaintiff had not entered into an agreement with the town with respect to the availability of public parking, nor had plaintiff's lease with the state included a provision about adequate parking. In fact, the only reference to parking contained in the rental agreement between plaintiff and the state is a provision requiring a minimum of three parking spaces for the handicapped.

Moreover, the extent of the decrease in public parking is not as grave as plaintiff asserts. Although the municipal parking lots were sold to the developer, the town also decided to add fifty-nine additional on-street public parking spaces, which spaces are located in the vicinity of the Registry.

In the words of the motion justice, the right to use the municipal parking lots "was equally vested in all citizens of the town or visitors thereto." When the town sold the municipal parking lots to the developer, the public as a whole was affected by the overall decrease in available public parking. The plaintiff's experience is not different from the experience of other businesses or people who utilized the municipal parking lots. As such, plaintiff has failed to demonstrate "a personalized injury distinct from that of the community as a whole." *Meyer*, 844 A.2d at 151.

The plaintiff nevertheless asserts that its injury was distinct—it was deprived of the benefit of a five-year lease with the state when the town sold the municipal parking lots to the developer. However, we agree with the motion justice's conclusion that this assertion merely is speculative. Although the state did not exercise its option to renew its lease with plaintiff for the five-year term in 2006, the state, up until the closure of the West Warwick branch, remained a holdover tenant on a month-to-month basis and never missed a payment of rent to plaintiff.

Indeed, plaintiff has not shown that the state declined the five-year lease renewal opportunity *as a result of* the parking decrease. Although the State Properties Committee meeting minutes indicate that parking was one of the state's concerns, the minutes also reveal that the Division of Motor Vehicles was planning to consolidate all its branches in one central location over the next few years. In view of that consideration, it no longer would be beneficial or wise for the state to pursue a five-year lease renewal when a relocation loomed in its future plans. This precise point was demonstrated by the closure of the West Warwick branch. Moreover, plaintiff has not lost a tenant as a result of the sale of the municipal parking lots. Rather, until the recent closure, the state remained a holdover tenant and continued to make monthly payments to plaintiff. The plaintiff's contention that it will not be able to relet the Main Street property is even more speculative than the alleged injury discussed above. Because plaintiff has failed to show any imminent harm from the reduction in public parking, we conclude that the motion justice properly dismissed its claim for lack of standing.

### C

### Comprehensive Plan

■ The plaintiff additionally alleges that the town violated the comprehensive plan when it sold the municipal parking lots to the developer, thereby decreasing the town's overall available public parking. The plaintiff asserts that it had relied upon the comprehensive plan, particularly its provisions concerning public parking. However, plaintiff cites only isolated provisions concerning public parking and fails to mention accompanying provisions in the

comprehensive plan, several of which refer specifically to affordable housing. Although the comprehensive plan addresses the lack of available parking in Arctic Village, the comprehensive plan likewise identifies the town's inclination to implement affordable housing. Indeed, in its chapter on housing, the comprehensive plan states: "Maintenance of an active housing program for the elderly and low/moderate income residents is a continuing concern." It appears that the town was seeking to address this "continuing concern" when it sold the municipal parking lots to the developer for the construction of low to moderate affordable housing.

Looking at the comprehensive plan in its entirety, we cannot conclude that the town's sale of the municipal parking lots was in contravention of the comprehensive plan. In fact, this sale appears to have been consistent with the comprehensive plan's goal of creating additional affordable housing. We recognize that a municipality has discretion in choosing options for conforming its ordinances or land use decisions to its comprehensive plan, something the town has done in the instant case. *See P.J.C. Realty, Inc. v. Barry*, 811 A.2d 1202, 1206–07 (R.I.2002). The town sold the municipal parking lots to further its objective of increased affordable housing. Recognizing the impact on public parking, the town created fifty-nine additional on-street public parking spaces. We conclude, therefore, that the plaintiff has not demonstrated that the town acted in violation of the comprehensive plan.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.