**TRUST OF Rose P. McMANUS, Elizabeth Cullen, Trustee**

v.

**Albert McMANUS et al.**

**No. 2009–191–Appeal.**

Supreme Court of Rhode Island.

May 10, 2011.

James P. Howe, Esq., Providence, for Petitioner.

James S. Lawrence, Esq., Warwick, for Respondent Daniel McManus.

Joseph J. Nicholson, Jr., Esq., Newport, for Respondent Albert T. McManus, Jr. and Jane Martino.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

This dispute arose when four siblings disagreed over how the estate of their mother should be divided. One sister, Elizabeth Cullen,[1] who was the trustee of the mother's *inter vivos* trust, filed a petition for an order to discharge her and to distribute the trust assets. Her brothers, Albert McManus, Jr., and Daniel Mc-Manus, and her sister, Jane Martino, objected. They counterclaimed, alleging that Elizabeth had misappropriated trust funds by failing to include the balance of a bank account in the trust assets. The trial justice granted summary judgment in favor of the siblings. It is from that judgment that Elizabeth now appeals.

This case came before the Supreme Court on April 6, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### Facts and Travel

On August 4, 2003, Rose McManus and her daughter Elizabeth opened a bank account at Citizens Bank. Apparently, the pair hoped that the account would make it easier for Elizabeth to care for her mother as she aged. There is no dispute that the money used to open the account belonged to Rose exclusively. There was a signature card, signed by both Rose and Elizabeth, that indicated that the account was "joint," but, significantly, the card did not include the phrase "right of survivorship." As soon as they opened the account, Elizabeth and her mother were provided with a form entitled "Disclosure for Personal Accounts." The disclosure provided information about various types of accounts and listed the possible forms of joint accounts as "Joint Account—With Survivorship (And Not As Tenants In Common)" and "Joint Accounts Opened With Only One Signature." This latter document explained that, for convenience, one account-holder could establish a joint account with only one signature and have the co-owner sign and return the signature card.

When Rose died on February 21, 2004, she was the survivor and trustee of an *inter vivos* trust that had been established by her and her late husband.[2] Rose had also executed a will that provided for the distribution of her estate through the trust by means of a "pour-over" provision. The trust agreement said that at Rose's death, the "balance of the principal of the Surviving Spouse's trust" was to be divided equally and distributed to each of Rose's then-living children, who were Albert, Jr., Daniel, and Jane, as well as Elizabeth. With the exception of the Citizens Bank account, the assets of the trust were divided and distributed without incident. At the root of this dispute is whether the Citizens Bank account was opened with a right of survivorship in Elizabeth, which would exclude it from the trust. In the alternative, if there was no right of surviv-

1. In this opinion, we occasionally use first names to refer to the parties or their mother, Mrs. Rose McManus. This is for purposes of clarity only, and we intend no disrespect. Additionally, Elizabeth Cullen and her sister, Jane Martino, are identified using their cur-

rent names, rather than their maiden name, McManus.

2. Rose's husband, Albert McManus, Sr., predeceased Rose, leaving Rose as the surviving spouse according to their trust agreement.

orship, then the proceeds of the joint account should have been included in the assets of the trust and distributed evenly among the four siblings, as directed by the trust agreement.

Elizabeth argued that the account had a right of survivorship; her siblings did not agree. To resolve the dispute, Elizabeth filed a petition in the Superior Court seeking an order to discharge her as trustee and deliver the trust assets.[3] The siblings responded to the petition and filed a counterclaim in which they alleged that Elizabeth had misappropriated money that properly belonged in the trust. After hearing arguments on the issue of whether the account gave Elizabeth a right of survivorship, the Superior Court granted summary judgment in favor of respondents. The motion justice reasoned that, although the signature card was stamped "joint," there was no reference to survivorship rights. The trust of Rose McManus, through the trustee, Elizabeth, appealed.[4]

### Standard of Review

■ "This Court reviews *de novo* a trial justice's decision granting summary judgment." *Lynch v. Spirit Rent–A–Car, Inc.*, 965 A.2d 417, 424 (R.I.2009) (citing *Cullen v. Lincoln Town Council*, 960 A.2d 246, 248 (R.I.2008)). This Court will af-

firm summary judgment if, when viewing the evidence in the light most favorable to the nonmoving party, "there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing *Cullen*, 960 A.2d at 248). "The party opposing summary judgment bears the burden of proving, by competent evidence, the existence of facts in dispute." *Id.* (quoting *Cullen*, 960 A.2d at 248).

### Analysis

■ Elizabeth argues that the presence of the word "joint" on the signature card, when combined with the verbiage of the "Disclosure for Personal Accounts," which was given to her and her mother when they opened the account, created a right of survivorship for the account. We do not agree. Neither document gives any indication of a right of survivorship, which is necessary to create such an interest. Our holdings in *Gaspar v. Cordeiro*, 843 A.2d 479, 481 (R.I.2004), and *Robinson v. Delfino*, 710 A.2d 154, 160–61 (R.I.1998), could not be clearer. Although the signature card is marked in its upper-right corner as "joint," there is no language there or anywhere else on the signature card suggesting the existence of a right of survivorship

---

**3.** Elizabeth filed her petition under G.L.1956 § 18–6–2(a), which says:

"Whenever a trustee holds any sum of money, or any bond, note, or other obligation for money, or evidence of indebtedness, or any certificate of stock or other chose in action, payable or deliverable to, or the property of, another, and the person entitled to it cannot, for any reason, give proper receipt or discharge for it, and the trustee holding the money or property desires to free himself or herself from further liability for it, the trustee may pay or deliver the money or property into the registry of the superior court, presenting with it his or her petition praying to be discharged, and set-

ting out, under oath, to the best of the knowledge, information, and belief of the affiant, the circumstances under which the trustee holds the money or property, and how the other person or persons is or are entitled to it, and why the trustee or they cannot give proper receipt or discharge for the money or property; and upon the filing of the petition, notice of it shall be given in the manner that the court shall direct."

**4.** The respondent, Albert T. McManus, Jr., died on September 7, 2010, and his wife, Elisabeth Greenfield, was substituted as a respondent in her capacity as executrix of the estate of Albert T. McManus, Jr.

in Elizabeth.[5]

In *Robinson*, 710 A.2d at 156, 160–61, we clarified the previously unpredictable and inconsistent law applied to joint bank accounts by holding that opening an account and executing signature cards that provide for a survivorship right would be proof of the depositor's intention to transfer an immediate right of ownership to the survivor.[6] Additionally, we said that the account's failure to specifically provide for survivorship rights is conclusive evidence of the intent not to transfer an ownership right to the survivor. *Id.* at 161. After *Robinson*, the depositor's intent regarding a survivorship right was to be examined only when "fraud, undue influence, duress, or lack of mental capacity" was alleged in the creation of the account, which is not the case here. *See id.*

To try to demonstrate the existence of a genuine issue of material fact, Elizabeth argues that the disclosure that was given to her and her mother when they opened the account must be read as part of the agreement with the bank. Relying on the disclosure, Elizabeth contends that the account descriptions suggest that, because the account was opened with two signatures, it was not a "Joint Account[ ] Opened With Only One Signature" and therefore must include a right of survivorship. The rules in the disclosure, however, apply to the account "depending on the ownership and the beneficiary designation, if any, specified on the account records," and the account at issue here specifies no

beneficiary designation. We addressed similar circumstances in *Gaspar*. In that case, the bank provided a document that included survivorship language, but the document never was signed and was issued two years after the accounts were opened. *Gaspar*, 843 A.2d at 480–81. The petitioner attempts to distinguish *Gaspar* by noting that here the disclosure was given to the account-holders when the account was opened, rather than two years later, but in *Gaspar* we relied on the lack of a signature, not the timing. *See id.* Specifically, we said "neither the signature cards nor any signed customer agreement provided the right of survivorship," and held that because the signature cards or other signed customer agreements lacked a right of survivorship, the surviving account-holder did not have a survivorship interest. *Id.* at 481.

By abandoning the formerly unpredictable and inconsistent approach, we sought to avoid situations whereby "lawyers, trial judges, juries, and appellate judges perform post mortem cerebral autopsies and examinations in order to determine and second-guess what the subjective intent of the deceased joint owner of the account was at the time the account was created." *Robinson*, 710 A.2d at 160. An inquiry into whether the signature card and disclosure may be interpreted together to create a survivorship right, an inquiry the petitioner urges upon us, would be exactly the type of foray into the mind of a deceased

---

5. The signature card contains two notations that the record does not identify: "SMT" and "E/E." "SMT" is typewritten and appears after "CIRSAV," which petitioner in her deposition said referred to the type of account, which was a "Circle Savings" account. "E/E" is handwritten and appears in the field marked "Special Instructions/Customer Account Title." Importantly, no party has alleged that these notations represent or even suggest a right of survivorship.

6. In explaining the need to clarify the state of the law, this Court in *Robinson v. Delfino*, 710 A.2d 154, 156–57 n. 8 (R.I.1998), noted that "[i]t has been facetiously noted that there are two ways to start a civil action in this state. The first is pursuant to Super.R.Civ.P. 3, and the second is by opening a joint bank account with right of survivorship."

person that our holdings in *Robinson* and *Gaspar* sought to foreclose. *See Gaspar*, 843 A.2d at 481; *Robinson*, 710 A.2d at 160. Therefore, because the Citizens Bank account at issue did not specifically provide for survivorship rights on the signature card or on any other signed document, we hold that it included no survivorship right.

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. We remand the papers in this case to that tribunal.