**WARWICK SEWER AUTHORITY et al.**

v.

**Felix CARLONE.**

**No. 2011–24–Appeal.**

Supreme Court of Rhode Island.

June 11, 2012.

494

Angelo R. Simone, Esq., Warwick, for Plaintiff Warwick Sewer Authority.

Peter D. Ruggiero, Esq., for Plaintiff City of Warwick.

Stephen C. Mackie, Esq., Providence, Eric R. Atstupenas, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, ROBINSON, and INDEGLIA, JJ.

**OPINION**

Chief Justice SUTTELL, for the Court.

The underlying action in this case concerns real property located in the City of Warwick (Warwick or city) that the defendant, Felix Carlone, dedicated to the city in 1979. The plaintiffs, Warwick Sewer Authority (WSA) and the city, brought a complaint for a declaratory judgment concerning the city's ownership of the property, and a hearing justice granted the plaintiffs summary judgment on that complaint. The defendant now appeals, contending that he dedicated the property on the condition that it be used as open space, that he maintains a reversionary interest in it, and that, therefore, genuine issues of material fact should have precluded the hearing justice from granting summary judgment. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

The essential facts of this case are not in dispute. In 1979, Mr. Carlone, a land developer, sought authorization from the Warwick Planning Board (planning board) to develop a subdivision of Governor Francis Farms in Warwick. In furtherance of obtaining such authorization, and in lieu of paying a fee,[1] Mr. Carlone dedicated to the city a portion of the subdivision to be developed—specifically, property designated as Assessor's Plat No. 314, lot No. 69. A plat map denoting Mr. Carlone's dedication was filed on September 19, 1979; the plat map depicted the property as "dedicated to the City of Warwick." Additionally, a plat card signifying the dedication was signed by the chair of the planning board and was recorded on September 19, 1979, by a deputy city clerk. One minute after filing the plat map, Mr. Carlone filed a document entitled "Restrictions and Protective Covenants Imposed by Felix A. Carlone and Elizabeth G. Carlone," which purported to subject the entire subdivision to be developed to various restrictions, including that it be used "exclusively for residential purposes." This document also stated that all of the property restrictions were to "run with the land."

At the time of its dedication, the property in question was zoned as A–10 residential. In 1988, however, Warwick underwent a citywide rezoning, during which time the dedicated property was rezoned to open space. Then, around 2009, the WSA initiated efforts to rezone the dedicated property back to A–10 residential. The WSA's goal in so doing was to permit the construction of "a pump station * * *

1. It is undisputed that in 1979, Warwick's subdivision regulations "required either a [fee in lieu] of land dedication or the donation of a portion of the proposed property to be subdivided to the [c]ity."

necessary for the successful operation of a portion of the [c]ity's sewer system."[2]

On April 8, 2009, the planning board voted to allow the dedicated property to be rezoned to A–10 residential so that a pump station could be constructed upon it. The Warwick City Council (city council), however, refused to authorize the zoning change. The city council's refusal seemingly stemmed from Mr. Carlone's claims before it that the dedicated property could be used only for open space, and that, should the zoning change be authorized, the property would revert back to him.[3] In light of Mr. Carlone's claims, and "[a]fter a lengthy discussion and public comments" at a meeting of the city council's Land Use Committee (committee), the committee chairman "directed the WSA to seek a declaratory judgment to resolve the question of ownership of the [p]roperty" and informed the WSA that "it [would] not vote on the change in zoning designation until there [was] a decision relative to this issue."

In keeping with the committee's direction, on December 15, 2009, the WSA and Warwick filed a complaint in the Superior Court for declaratory relief and quiet enjoyment. Specifically, plaintiffs requested that the Superior Court declare that the dedicated property is owned by Warwick, that it is not subject to the property restrictions filed by Mr. Carlone after his dedication, that Mr. Carlone has no rights to the dedicated property, and that he has no right to interfere with the city's quiet enjoyment of the property. The plaintiffs also averred that "[t]he delay in construction of the pump station has resulted in significant monetary loss to the WSA and the [c]ity and will continue to do so until this issue is decided."

On January 5, 2010, Mr. Carlone filed a motion to dismiss plaintiffs' complaint for lack of standing. In his memorandum in support of his motion, he stated that while he "ha[d] notified the [c]ity and the WSA that if the zoning [were to be] changed, he [would] take action, he has done nothing as of this time, except continue to assert that the land must remain open space and that the restrictions are still valid." Therefore, according to Mr. Carlone, "there is no actual controversy at this time."

On February 4, 2010, the WSA filed a motion for summary judgment. In its memorandum in support of its motion, the WSA asserted that the city council's "reluctance to vote on the zoning change heavily favor[ed] declaratory relief." The WSA further argued that Mr. Carlone's "unambiguous" intent to dedicate the land in question, as evidenced by the filed plat map and the recorded plat card, was "dispositive" of all his claims. On March 5, 2010, Warwick also filed a motion for summary judgment, similarly asserting that "[n]o genuine issue of material fact exist[ed] regarding the decision by [Mr.]

---

**2.** The pump station was to be a part of a larger sewer construction project serving 345 properties in Governor Francis Farms, as well as approximately 270 properties in the Gaspee Point area of Warwick. From the outside, such a pump station would "look like a medium-sized shed with wood shingles" and would take up 345 square feet, or 3 percent, of the dedicated property.

**3.** Mr. Carlone attended several city council meetings at which he made these claims. He additionally wrote a demand letter to the city council on October 9, 2009, asserting that at the time that he dedicated the land in question to Warwick, "there was a bilateral understanding that the land would remain free for open space," and that "the dedication and restrictions on the property prohibit[ed] using this property as a location for a sewer pumping station." In the same letter, Mr. Carlone demanded $191,000 in compensation from the city for "the illegal taking" of his land.

Carlone to transfer the [d]onated [l]ot to the [c]ity."

In objecting to plaintiffs' summary-judgment motions, Mr. Carlone filed his own affidavit, as well as the affidavits of George Valkoun, Warwick's deputy planning director in 1979, and George M. Landes, Mr. Carlone's attorney in 1979. In his own affidavit, Mr. Carlone stated that he was "notified" in 1979 by the "[c]ity [p]lanner" that he "would be required to dedicate a parcel to the [c]ity and that the [c]ity would be unwilling to accept a monetary fee in lieu of the dedication." He further noted that he was "advised by the [c]ity [p]lanner that the dedicated land would remain open space and that the land would revert back to [Mr. Carlone] if the [c]ity were to use the land in any manner contrary to this condition."

Mr. Valkoun, Warwick's deputy planning director in 1979, described in his affidavit the "two policies" concerning "plat development" that were in place at the time of Mr. Carlone's property dedication: "One, a developer could dedicate a lot from a proposed subdivision for the purpose of 'open space and recreation' or two, pay the city a fee based upon a land value * * *." Mr. Valkoun noted that "[i]t was the preference of the city to receive land, but in the event there was not a suitable piece of property, the city accepted the money donation."

Finally, Mr. Landes, who had represented Mr. Carlone during his dedication of the subject property, stated in his affidavit that he had "several" conversations with "Bill George from the [p]lanning [d]epartment," during which conversations this individual "advised that the [c]ity required a dedication of land specifically for 'open space'" and "insisted on the dedication" instead of a fee. Mr. Landes additionally noted that "[t]here is no question that [he

and Mr. Carlone] were told that this was for open space and for no other reason."

A hearing was held on March 22, 2010, at which Mr. Carlone reasserted his argument in support of his motion to dismiss, stating that because he had not "filed any action at all in any court," plaintiffs' declaratory judgment claim was not "ripe." Also at the hearing, the hearing justice pressed Mr. Carlone to present a "legal basis to find that an agreement was reached that Mr. Carlone would get the property back or be paid the value of that property should [the city] use it for something other than open space." Mr. Carlone referred the hearing justice to his own affidavit, as well as to the affidavits of Mr. Valkoun and Mr. Landes. According to Mr. Carlone, these affidavits demonstrated that "the actual use of the land for the past [thirty] years ha[d] been open space," and "that [was] the only reason why * * * Warwick had the right to take that land from [him thirty] years ago." When the hearing justice requested specific documentation of the conditional agreement that Mr. Carlone insisted he had entered into with the city, however, Mr. Carlone was unable to present any.

The hearing justice issued a bench decision on plaintiffs' summary-judgment motions. He first stated that declaratory judgment actions "are discretionary with the [c]ourt and the[ir] purpose is to advise the parties as to their rights and status with respect to certain legal issues they put before the [c]ourt for decision." The hearing justice then made the following findings:

"There is nothing [in] the documents relating to the transfer of [the dedicated] land to * * * Warwick that mentions anything about it being used for any purpose whether it be open space or any other purpose. There is also no language documented relating to this

transfer that mentions a reversionary interest of any kind back to Mr. Carlone under any circumstances whatsoever." The hearing justice noted that "the law is clear" that "where there is no ambiguity in the written instruments[,] parol[ ] evidence should not be received by the [c]ourt to contradict otherwise clearly written documents." Not finding any ambiguity in the documents at issue in this case, the hearing justice declined to entertain parol evidence from the parties and, ultimately, granted summary judgment in favor of plaintiffs on both counts of their complaint for declaratory relief. In so doing, the hearing justice remarked that he saw "no impediment to the [c]ity changing the zoning for the purpose[ ] of erecting a small building to house a sewer pumping station."

An order granting only the WSA's motion for summary judgment was entered on March 29, 2010, and a final judgment on that order was entered on the same date.[4] Mr. Carlone appealed to this Court on April 9, 2010, after which appeal we remanded the case back to the Superior Court "for entry of an amended final judgment as it relates to both plaintiffs." On October 6, 2011, the Superior Court entered an amended final judgment, correcting the apparent oversight to include both plaintiffs in the order and in the final judgment.

## II

### Standard of Review

■■■■ "This Court reviews *de novo* a trial justice's decision granting summary judgment." *Higgins v. Rhode Island Hospital*, 35 A.3d 919, 922 (R.I.2012) (quoting *Lynch v. Spirit Rent–A–Car, Inc.*, 965

A.2d 417, 424 (R.I.2009)). We "will affirm summary judgment if, when viewing the evidence in the light most favorable to the nonmoving party, 'there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Trust of McManus v. McManus*, 18 A.3d 550, 552 (R.I.2011)). "The party opposing summary judgment bears the burden of proving, by competent evidence, the existence of facts in dispute." *Id.* (quoting *Trust of McManus*, 18 A.3d at 552).

■■■ We similarly employ a *de novo* standard "[w]hen reviewing an appeal based on an alleged error of law." *N & M Properties, LLC v. Town of West Warwick*, 964 A.2d 1141, 1144 (R.I.2009) (quoting *State v. Jennings*, 944 A.2d 171, 173 (R.I. 2008)). "Our review is *de novo* because 'this Court is in the best position to decide the merits of a given question of law.'" *Id.* (quoting *Lett v. Providence Journal Co.*, 798 A.2d 355, 363 (R.I.2002)).

## III

### Discussion

### A

### Justiciability

Before reaching Mr. Carlone's substantive claims on appeal, we address his assertion that "the Superior Court lacked the requisite jurisdiction" to grant plaintiffs' motions for summary judgment because "no actual justiciable controversy" existed in this case. Mr. Carlone argues that plaintiffs lacked standing to bring their complaint because Mr. Carlone "had done nothing as of [the time of the filing of the complaint], except continue to assert that the land must remain open space and

---

4. The Superior Court's failure to also include Warwick in the order and the final judgment apparently was unintentional.

that the restrictions were still valid." He additionally contends that any possible claim by him is "merely conjectural and hypothetical," making the grant of summary judgment premature.

■■■ "[A] necessary predicate to a court's exercise of its jurisdiction under the Uniform Declaratory Judgments Act[, G.L. 1956 chapter 30 of title 9,] is an actual justiciable controversy." *Meyer v. City of Newport*, 844 A.2d 148, 151 (R.I.2004) (quoting *DeAscentis v. Pine*, 729 A.2d 715, 717 (R.I.1999)). For a justiciable controversy to exist, "two elemental components must be present: (1) a plaintiff with the requisite standing and (2) 'some legal hypothesis which will entitle the plaintiff to real and articulable relief' " *N & M Properties, LLC*, 964 A.2d at 1145 (quoting *Bowen v. Mollis*, 945 A.2d 314, 317 (R.I. 2008)). "The standing inquiry is satisfied when a plaintiff has suffered '[some] injury in fact, economic or otherwise.' " *Id.* (quoting *Bowen*, 945 A.2d at 317). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not 'conjectural' or 'hypothetical.' " *Id.* (quoting *Pontbriand v. Sundlun*, 699 A.2d 856, 862 (R.I.1997)). "We also have recognized the importance of the personal nature of a plaintiff's injury and have held that a plaintiff must 'demonstrate a personalized injury distinct from that of the community as a whole.' " *Id.* (quoting *Meyer*, 844 A.2d at 151).

■■■ In the case at hand, it is clear that at the time of the filing of the complaint

for declaratory relief, the WSA was at an impasse in its plans to construct a pump station on the dedicated property: The city council made clear its refusal to authorize the rezoning necessary to construct the pump station until such declaratory relief was obtained. It furthermore is clear that it was Mr. Carlone's claims, *viz.*, that he dedicated the property in question subject to it being used exclusively for open space and that he maintains a reversionary interest in the property, that directly caused this impasse. As Mr. Carlone himself admits, he attended several city council meetings at which he pressed his claims, and he additionally wrote a letter to the city council demanding that Warwick pay him $191,000 for "the illegal taking" of his land. Indisputably, Mr. Carlone's claims to the dedicated property directly impeded the WSA's ability to construct a pump station on the property, and the city incurred additional costs as a result of corresponding construction delays. In light of this, we are of the opinion that plaintiffs indeed suffered an "injury in fact" and, therefore, had standing to bring a declaratory judgment action to determine their rights to the dedicated property. *N & M Properties, LLC*, 964 A.2d at 1145 (quoting *Bowen*, 945 A.2d at 317).[5]

"The second requirement for justiciability is that 'the facts postulated yield to some conceivable legal hypothesis which will entitle the plaintiff to some relief against the defendant.' " *N & M Properties, LLC*, 964 A.2d at 1145 (quoting *Goodyear Loan Co. v. Little*, 107 R.I. 629, 631, 269 A.2d 542, 543 (1970)). We previously

---

**5.** In his brief to this Court, defendant states that after the appeal was filed, "[u]pon information and belief, * * * Warwick * * * changed the zoning of this [l]ot from [o]pen [s]pace to A–10 [r]esidential." It would indeed appear that, by ordinance dated June 15, 2010, lot No. 69 on Assessor's Plat No. 314 was changed to A–10 residential "for the pur-

pose of constructing a sewer pump station on such parcel and such parcel shall not be used for any other purpose." The defendant does not suggest that the presumed passage of such ordinance, which is not part of the record before us, moots, or in any way affects the justiciability of, the issues on appeal.

have noted that "[w]here a concrete issue is present and there is a definite assertion of legal rights coupled with a claim of a positive legal duty with respect thereto which shall be denied by [the] adverse party, then there is a justiciable controversy calling for the invocation of the declaratory judgment action." *Id.* (quoting 1 Anderson, *Actions for Declaratory Judgments* § 14 at 62 (2d ed.1951)). Because Mr. Carlone does not assert that the second requirement of justiciability has not been met, we simply highlight that plaintiffs, in their complaint for declaratory relief, have presented sufficient facts giving rise "to some conceivable legal hypothesis which will entitle [them] to some relief against" Mr. Carlone. *Id.* (quoting *Goodyear Loan Co.*, 107 R.I. at 631, 269 A.2d at 543).

## B

### Summary Judgment

Mr. Carlone argues on appeal that the hearing justice erred in granting plaintiffs' motions for summary judgment because the land dedication at issue "did not operate as a grant of land which divest[ed him] of all of his property rights." To support his argument, Mr. Carlone relies on his own affidavit, as well as the affidavits of Mr. Valkoun and Mr. Landes, all of which, according to him, confirm that the land in question was dedicated "specifically for open space," and that "if the land should ever be used for any purpose other than open space, the land would revert back to him." Mr. Carlone acknowledges that the plat map evidences an unconditional dedication; he argues, however, that the parol evidence that he presented in opposition to plaintiffs' motions for summary judgment

should be admitted "in order to both clarify and complete the otherwise incomplete and ambiguous agreement between the [c]ity and [Mr.] Carlone."

We previously have recognized that "[d]edication of private property to the public is * * * an exceptional and unusual method by which a landowner passes to another an interest in his property." *Robidoux v. Pelletier*, 120 R.I. 425, 433, 391 A.2d 1150, 1154 (1978). Despite its exceptional and unusual nature, however, such dedication has long existed at common law.[6] *See Newport Realty, Inc. v. Lynch*, 878 A.2d 1021, 1033–39 (R.I.2005) (providing background of dedication for public use at common law). In *Robidoux*, 120 R.I. at 433, 391 A.2d at 1154, we explained the prerequisites for an effective dedication as being "(1) a manifest intent by the landowner to dedicate the land in question, called an incipient dedication or offer to dedicate; and (2) an acceptance by the public either by public use or by official action to accept the same on behalf of the municipality." We also held in *Robidoux*, 120 R.I. at 434, 391 A.2d at 1155, that the recordation of a plat plan can suffice "to disclose a landowner's dedicatory intent." *See also Newport Realty, Inc.*, 878 A.2d at 1033 ("[I]n most instances[,] the filing and the acceptance of a plat plan are sufficient evidence of a landowner's intent to dedicate land * * *." (quoting *Donnelly v. Cowsill*, 716 A.2d 742, 748 (R.I.1998))).

■ It is true that most public-dedication cases, including *Robidoux*, deal with dedications of roadways. *See Newport Realty, Inc.*, 878 A.2d at 1025, 1041–42 (dealing with incipient dedication of streets); *Robidoux*, 120 R.I. at 427, 433, 391 A.2d at

---

**6.** Although not pertinent to the case at bar, we note that in 1992, the General Assembly enacted the Development Review Act, G.L. 1956 chapter 23 of title 45, as enacted by P.L.

1992, ch. 385, § 1. Among other things, the Development Review Act set forth specific requirements for dedication of public land. Section 45–23–47.

1151, 1154 (dealing with dedication for public use of a road); *State v. Frank W. Coy Real Estate Co.,* 44 R.I. 357, 358, 362, 117 A. 432, 433, 434 (1922) (dealing with dedication for public use of a road). Although the case before us concerns the dedication of land not for roadway purposes, we nevertheless find the law set forth in the aforementioned cases germane and apply it here. In so doing, we observe that in 1979, Mr. Carlone filed a plat map depicting the property in question as "dedicated to the City of Warwick." The plat map contains no limitations or restrictions on the dedicated property. As such, we are of the opinion that it sufficiently and unambiguously evidences Mr. Carlone's intent to dedicate the land in question to Warwick for general public use. Acceptance by the public, the second element required to effectuate a dedication, is also met here. *See Robidoux,* 120 R.I. at 433, 391 A.2d at 1154. Specifically, Warwick accepted Mr. Carlone's dedication of the property in question by noting this dedication on a plat card that was signed by the chair of the planning board and recorded by a deputy city clerk.

■■■ Mr. Carlone asserts that parol evidence is needed to "both clarify and complete the otherwise incomplete and ambiguous agreement between [himself and] the [c]ity." The plat map filed by Mr. Carlone and the plat card recorded by the city—the only two documents evidencing Mr. Carlone's dedication—both explicitly describe the land in question as "dedicated to the City of Warwick," and neither document contains any limitations or restric-

tions on the dedication. As such, these documents are unambiguous on their face, and we deem Mr. Carlone's argument to the contrary unavailing. As we previously have held, "[i]n the absence of a finding that the recorded plat is ambiguous, we know of no authority that permits a trial justice to go beyond the plat and entertain parol or extrinsic evidence to vary the terms of a writing." *Newport Realty, Inc.,* 878 A.2d at 1034. Because no ambiguity exists on the face of the writings in this case, the parol evidence that Mr. Carlone presented—specifically, his own affidavit, as well as the affidavits of Mr. Valkoun and Mr. Landes—rightly was not entertained by the hearing justice to vary the writings' terms.[7]

Finally, Mr. Carlone seemingly implies in his brief to this Court that the property restrictions that he filed with the city immediately after filing the plat map somehow operate to restrict Warwick from rezoning the dedicated land from open space to A–10 residential. We note, however, that the property was zoned A–10 residential at the time that the restrictions were recorded. We also are satisfied that rezoning the dedicated land back to A–10 residential would be entirely consistent with the restrictions' intent that the subdivision be used only for residential purposes. Moreover, even assuming *arguendo* that the property restrictions prevented the dedicated property from being used for anything other than open space, any such restrictions have now lapsed by statute. *See* G.L.1956 § 34–4–21.[8]

---

7. In light of this holding, we need not address Mr. Carlone's argument that "[t]he act of building a sewage pumping station on [the dedicated] land would be * * * quite contrary to the [open-space] purpose for which that land was dedicated," and would, in fact, "result in a complete obliteration of the intended purpose." The only evidence that the land in

question was dedicated for open space is extrinsic, and extrinsic evidence is to be considered only when there is "an ambiguity on the face of the recorded plat." *Newport Realty, Inc. v. Lynch,* 878 A.2d 1021, 1034 (R.I.2005).

8. General Laws 1956 § 34–4–21 states, in pertinent part:

Because no genuine issue of material fact exists in this case, we affirm the hearing justice's grant of summary judgment in favor of the plaintiffs.

## IV

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record of the case shall be remanded to the Superior Court.

Justice FLAHERTY did not participate.

"If a covenant or restriction concerning the use of land * * * is created by any instrument taking effect after May 11, 1953, the covenant or restriction, if unlimited in time in the instrument, shall cease to be valid and operative thirty (30) years after the execution of the instrument creating it * * *."