April 27, 2022

**Supreme Court**

No. 2021-193-Appeal.
(P 20-4616M)

James Lacera　　　　　　　:

v.　　　　　　　　　:

Department of Children, Youth, and　:
　　　Families.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|                                         |   |
| --------------------------------------- | - |
| James Lacera                            | : |
|                                         |   |
| v.                                      | : |
|                                         |   |
| Department of Children, Youth, and Families. | : |

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.**  The plaintiff, James Lacera (plaintiff or Mr. Lacera), appeals from a final order of the Family Court dismissing his verified miscellaneous petition for declaratory judgment.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this appeal may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the order of the Family Court.

- 1 -

## Facts and Procedural History

This action for declaratory judgment stems from an investigation by the defendant, the Department of Children, Youth, and Families, into the maltreatment of Mr. Lacera's biological grandchild, whom we refer to as "ML" to protect the child's privacy. The Family Court dismissed the case brought by Mr. Lacera on the pleadings; therefore, we rely on the facts alleged in Mr. Lacera's petition and accept them as true. *E.g.*, *Warfel v. Town of New Shoreham*, 178 A.3d 988, 991 (R.I. 2018). We also take judicial notice of the parallel proceedings in the Family Court involving DCYF's petition for termination of parental rights and the subsequent adoption of ML.[1] *See Doe v. Brown University*, 253 A.3d 389, 395 (R.I. 2021).

ML was placed in DCYF custody upon allegations of abuse and neglect against his parents. DCYF subsequently placed ML with a nonrelative foster family. Mr. Lacera commenced efforts to obtain placement of his grandchild through meetings with the assigned DCYF case workers; visits with ML; attempts to appear at court hearings, with counsel; and informal efforts to intervene in Family Court proceedings involving ML. Most notably, Mr. Lacera's efforts included appearing in person and with representation before a justice of the Family Court at a bench conference to request leave to intervene in one or more of the DCYF proceedings

---

[1] We note that Mr. Lacera does not as a factual matter dispute the final dispositions in those proceedings.

- 2 -

involving his son, who is ML's father. The Family Court denied Mr. Lacera permission to do so. Mr. Lacera acknowledged at arguments before this Court that he did not attempt to intervene or obtain a denial from the Family Court from which he could appeal, nor did he enter an appearance, file any other motion, or place anything on the record.

Mr. Lacera maintained in his petition that, throughout this process, he was eligible to adopt ML, and he expressed an unwavering desire to obtain placement of ML. Moreover, Mr. Lacera has maintained that DCYF never formally excluded him as a fit and willing relative for placement of ML.

However, on October 7, 2020, the Family Court terminated Mr. Lacera's son's parental rights to ML.

On October 28, 2020, Mr. Lacera filed the present petition for declaratory judgment against DCYF in the Family Court. Mr. Lacera sought declarations that (1) DCYF violated its statutory obligations under G.L. 1956 § 14-1-27(c) by not considering Mr. Lacera as a fit and willing relative for placement of ML; (2) DCYF never formally denied Mr. Lacera's request for placement of ML; (3) DCYF violated its statutory obligations by not placing ML with Mr. Lacera, a fit and willing relative; (4) Mr. Lacera had priority status for the adoption of ML as he would have had if DCYF had granted him placement of ML initially; (5) DCYF violated its statutory obligations by not recruiting Mr. Lacera as an adoptive party for ML; (6) DCYF was

required to evaluate and consider Mr. Lacera as a party to adopt ML; (7) it was in the best interest of ML to be adopted by a suitable blood relative over an unrelated party; and (8) Mr. Lacera was entitled to any further relief the Family Court deemed proper. On that same date, Mr. Lacera sought a temporary restraining order and preliminary injunction to stay any adoption proceedings related to ML; the trial justice denied his motion.

On October 30, 2020, DCYF moved to dismiss the petition and opposed Mr. Lacera's motion for preliminary injunction, arguing that DCYF's petition to terminate the parental rights of Mr. Lacera's son had been granted and a final decision entered.

A hearing on Mr. Lacera's declaratory-judgment petition was initially scheduled for February 2021. On November 20, 2020, Mr. Lacera moved to expedite the matter, alleging that the adoption of ML by the foster family was imminent and scheduled for December 4, 2020. The trial justice denied the motion to expedite on an emergency basis, indicating that December 4, 2020, was not the adoption date; that the instant matter was scheduled for February 5, 2021; and that plaintiff was required to notify all parties involved.

On December 9, 2020, ML's foster family finalized their adoption of ML.

Mr. Lacera's declaratory-judgment action was continued from February through May 2021. Finally, on June 18, 2021, a trial justice convened the parties for

argument and to render a final decision. In addition to maintaining that the Family Court had terminated the parental rights of Mr. Lacera's son, DCYF also argued that the trial justice could not reach behind the then-finalized adoption of ML. The trial justice granted DCYF's motion to dismiss pursuant to Rule 12(b)(6) of the Family Court Rules of Domestic Relations Procedure after finding that Mr. Lacera lacked standing to maintain the petition and that there was no legal basis for him to obtain what was tantamount to the reversal of an adoption. An order dismissing the petition entered, and Mr. Lacera timely appealed.

Mr. Lacera maintains before this Court that he had standing to seek declaratory relief because he sought resolution of a justiciable controversy in which he maintained a personal stake.

### Discussion

"In reviewing the grant of a motion to dismiss, this Court applies the same standard as the hearing justice." *Warfel*, 178 A.3d at 991 (alterations omitted) (quoting *Audette v. Poulin*, 127 A.3d 908, 911 (R.I. 2015)). We assume the allegations in the petition are true and view the facts in the light most favorable to the plaintiff. *Id.* A Rule 12(b)(6) analysis "requires a resolution of the overarching issue of justiciability[.]" *Boyer v. Bedrosian*, 57 A.3d 259, 270 (R.I. 2012). Moreover, we review such questions of law *de novo*. *See N & M Properties, LLC v. Town of West Warwick ex rel. Moore*, 964 A.2d 1141, 1144 (R.I. 2009).

Declaratory-judgment proceedings are novel statutory proceedings that facilitate the termination of controversies and allow the trial court "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." *N & M Properties, LLC*, 964 A.2d at 1144 (quoting G.L. 1956 § 9-30-1); *see Northern Trust Co. v. Zoning Board of Review of Town of Westerly*, 899 A.2d 517, 520 n.6 (R.I. 2006) (mem.); *Bradford Associates v. Rhode Island Division of Purchases*, 772 A.2d 485, 489 (R.I. 2001). The decision to grant or deny declaratory relief is purely discretionary. *E.g.*, *Providence Teachers Union v. Napolitano*, 690 A.2d 855, 856 (R.I. 1997). However, declaratory-judgment actions still require the trial justice to resolve issues of justiciability. *N & M Properties, LLC*, 964 A.2d at 1144-45. "The constituent parts of a justiciable claim include a plaintiff who has standing to pursue the action and some legal hypothesis which will entitle the plaintiff to real and articulable relief." *Bowen v. Mollis*, 945 A.2d 314, 317 (R.I. 2008) (quoting *McKenna v. Williams*, 874 A.2d 217, 226 (R.I. 2005)).

A plaintiff has standing where that plaintiff has alleged "injury in fact, economic or otherwise." *Bowen*, 945 A.2d at 317 (brackets omitted) (quoting *Rhode Island Ophthalmological Society v. Cannon*, 113 R.I. 16, 22, 317 A.2d 124, 128 (1974)). The injury must involve a "legally cognizable and protectable interest[,]" *id.*, that is "concrete and particularized[.]" *Id.* (quoting *Pontbriand v. Sundlun*, 699

A.2d 856, 862 (R.I. 1997)). In short, the plaintiff must allege a "personal stake in the outcome of the controversy[.]" *Id.* (quoting *McKenna*, 874 A.2d at 225).

In his petition, Mr. Lacera asserted that he had statutory priority for placement and adoption of ML pursuant to § 14-1-27(c), which provides, in pertinent part:

> "When DCYF makes application to the court to take a child into temporary custody due to allegations of abuse and/or neglect or dependency, DCYF shall have the duty to investigate the possibility of placing the child or children with a fit and willing relative not residing with the parents. DCYF shall conduct an assessment into the appropriateness of placement of the child or children with the relative within thirty (30) days of the child's placement in the temporary custody of DCYF. If the department determines that the relative is a fit and proper person to have placement of the child, the child *shall be placed with that relative*, unless the particular needs of the child make the placement contrary to the child's best interests. All placements with relatives shall be subject to criminal records checks * * *." (Emphasis added.)

Mr. Lacera conceded at oral arguments before this Court that any such declaration—in light of the fact that ML's adoption has been formalized—would be a Pyrrhic victory but nevertheless an important declaration that he was wronged by DCYF's actions over the past three years.

We acknowledge the statutory rights contained in § 14-1-27. We are constrained, however, to conclude that those rights were divested when the Family Court terminated the parental rights of Mr. Lacera's son on October 7, 2020. *See* G.L. 1956 § 15-7-7 (the termination of parental rights "terminate[s] *any and all legal*

- 7 -

*rights of the parent to the child*") (emphasis added). A termination of parental rights is "drastic and irreversible[,]" *In re Manuel P.*, 252 A.3d 1211, 1218 (R.I. 2021) (quoting *In re Rylee A.*, 233 A.3d 1040, 1051 (R.I. 2020)), and far-reaching.

Mr. Lacera's legal status as grandparent to ML stemmed solely from the legal status of Mr. Lacera's son as ML's father. *See Suster v. Arkansas Department of Human Services*, 858 S.W.2d 122, 124-25 (Ark. 1993) (holding that a grandparent did not have standing to intervene in pending proceedings because the grandparent's rights under a grandparent visitation statute were derivative of the parent's rights and were accordingly extinguished when a termination of parental rights was effected against the parent from whom the grandparent's rights derived); *In re Interest of Ditter*, 326 N.W.2d 675, 677 (Neb. 1982) (holding that paternal grandparents' rights to statutory visitation were divested when the father's parental rights were terminated and that, therefore, the grandparents did not have standing to maintain an action for visitation); *In re Kristy L.*, 787 A.2d 679, 683, 685-86 (Conn. Super. Ct. 1999) (holding that grandparents did not have standing to bring a habeas action to obtain custody of their biological grandchild because the grandparents' rights were derivative of the parent's rights, which were terminated); *cf. In re Nicholas*, 457 A.2d 1359, 1360 (R.I. 1983) (holding that the termination of a father's rights via an adoption was conclusive upon the legal rights of "all who might claim by, through, or under" the father, including extinguishing visitation rights of the

paternal grandfather under Rhode Island's grandparents' visitation statute). *Contra Puleo v. Forgue*, 610 A.2d 124, 125-26 (R.I. 1992) (holding in the context of an adoption that the adoption did not affect or limit a *pre-existing* grant of visitation under the grandparents' visitation statute without further action by the court). Therefore, once Mr. Lacera's son no longer retained his legal status as ML's father, Mr. Lacera no longer had a "legally cognizable and protectable interest" under § 14-1-27(c). *Bowen*, 945 A.2d at 317. Accordingly, Mr. Lacera did not have standing to seek adjudication of his rights to ML when he filed the petition in the Family Court on October 28, 2020.

We reject as disingenuous, however, DCYF's argument both before the Family Court in the first instance and before this Court on appeal that, because the adoption of ML was finalized, the case was moot. In the Family Court, DCYF opposed the resolution of Mr. Lacera's petition prior to finalization of the adoption proceedings by moving to dismiss and opposing Mr. Lacera's motion for injunctive relief to stay the adoption proceedings; DCYF then argued that the petition was moot due to the subsequent adoption—an insincere position. DCYF is the sole authority in the State of Rhode Island designated to provide comprehensive social services for children and their families, G.L. 1956 § 42-72-2(5), and we are troubled by its stance in this case.

We remind DCYF that its work implicates and may even irreparably extinguish solemn constitutional and statutory rights, and all agency actions inside and outside the courts should reflect the grave nature of the department's task. *E.g.*, *Santosky v. Kramer*, 455 U.S. 745, 759 (1982) ("When the State initiates a parental rights termination proceeding, it seeks not merely to infringe [a] fundamental liberty interest, but to end it."); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment.") (internal citations omitted).

## Conclusion

For the foregoing reasons, we affirm the order of the Family Court and remand the record.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | James Lacera v. Department of Children, Youth, and Families. |
| **Case Number** | No. 2021-193-Appeal. (P 20-4616M) |
| **Date Opinion Filed** | April 27, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Merola |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Patrick F. Dowling, Jr., Esq. |
| | For Defendant:<br><br>Benjamin Copple<br>Department of Children, Youth, and Families |